CHART, by Guardian *ad litem,* Respondent, v. DVORAK and another, Appellants.*

*No. 308. Argued January 3, 1973.—Decided January 30, 1973.*
(Also reported in 203 N. W. 2d 673.)

* Motion for rehearing denied, without costs, on March 27, 1973.

94

For the appellants the cause was argued by *Benjamin Southwick,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Curtis M. Kirkhuff,* attorney, of Madison, and *Richard E. Sommer,* guardian *ad litem,* of Rhinelander, and oral argument by *Mr. Kirkhuff.*

WILKIE, J.   Three issues are presented by this appeal:

1. Are appellants Dvorak and Varekois proper parties defendant?

2. If, as a matter of law, a highway warning sign located in conformance with the state highway commission's directives is reasonable, is there nevertheless a question of fact concerning the placement of that sign so that the trial court properly denied appellants' motion for summary judgment?

3. May appellants be properly proceeded against for a highway warning sign which was improperly placed by their staff?

*Proper parties defendant.*

Appellants first argue that they are the wrong parties, because they had no role in the actual placement of the highway warning signs and they did not supervise such placement. The proper parties, they assert, are those state employees, members of the sign crew, who actually dug the hole and implanted the sign pole.

Respondent, citing *Truesdill v. Roach,*[3] argues that appellants waived this objection by not demurring to the

---

[3] (1960), 11 Wis. 2d 492, 105 N. W. 2d 871.

complaint. However, sec. 263.11, Stats., permits objection to those demurrable defects outlined in sec. 263.06 to be made in an answer. This they did and accordingly their objection was not waived.

However, we find no merit in the contention of appellants that they are not the proper parties defendant. According to the state highway commission description of Dvorak's job, entitled "Guide for District Chief Maintenance Engineer," his designated function was:

". . . advising and assisting the district engineer; with the supervision of maintenance, traffic, and waysides and landscaping work, including bringing about standard practices, performance, and results in maintenance operations, *signing and marking of highways,* and waysides and landscaping; and with related services in the district." (Emphasis added.)

More specifically, Dvorak's "operations and activities" were designated to be:

"6. *He will supervise and direct the execution of all maintenance, traffic,* and waysides and landscaping improvement work, *ensuring that all contracts, agreements, and special provisions are carried out in accordance with approved policies and procedures.*
". . .
"8. *He will maintain overall responsibility for the district sign shop, highway marking and signing, and related traffic activities.*" (Emphasis added.)

As the district chief maintenance engineer, Dvorak's responsibility and authority were stated to be:

". . . is responsible for and has commensurate authority to accomplish the fulfillment of the duties set forth below. He may delegate to members of his staff appropriate portions of his responsibilities, together with proportionate authority for their fulfillment, *but he may not delegate or relinquish his overall responsibility for results, nor any portion of his accountability.*" (Emphasis added.)

As the district traffic supervisor, Varekois' employment functions and responsibilities were similarly designated by the state highway commission. His function was "the *immediate supervision of traffic activities and related services* in the district." (Emphasis added.) His specific operations and activities included:

"1. He will provide immediate supervision and direction of traffic engineering activities in accordance with approved policies and procedures.

"2. He will supervise the sign shop and the signing and marking programs.
". . .

"4. *He will supervise the installation and maintenance of signs and traffic control devices.*" (Emphasis added.)

As with Dvorak, his immediate superior, Varekois' authority and accountability for results were not delegable to his subordinates.

We conclude that the proper parties defendant must be determined by the nature of the operative facts constituting the invasion complained of.[4] The alleged wrongful act here is an insufficient warning of a known highway hazard. As both Dvorak and Varekois had official, non-delegable authority and responsibility for the placement of such highway warning signs, they are the proper parties defendant.

### *Factual question on negligence.*

Appellants argue that they, as state employees, cannot be liable in tort for any accident resulting from the location of a highway warning sign which was placed in conformance with a legislative directive of the state highway commission. ,

They contend, first, that the placement of the sign in compliance with the 750-foot directive adopted by the

---

[4] *See generally, Caygill v. Ipsen* (1965), 27 Wis. 2d 578, 135 N. W. 2d 284.

state highway commission's Manual on Uniform Traffic Control Devices for Streets and Highways, pursuant to its statutory authority in 1961,[5] is reasonable as a matter of law.

This argument is untenable because it assumes that the highway warning signs were placed in strict conformance with the 750-foot directive of the state highway commission. Although appellants' affidavit asserts that the highway warning signs were placed 794.5 feet from the

---

[5] Sec. 84.02 (4) (c) and (d), Stats. 1959:

"(c) The commission shall erect and maintain such standard guide and warning signs as it deems necessary along the state trunk system, and it shall be unlawful to erect or display any other guide or warning signs upon the state trunk system, except in cases of emergency or when approved by the commission. Any erection in violation hereof may be removed by the commission.

"(d) The commission may co-operate with the Public Roads Administration or other designated agency of the federal government in formulating and adopting or changing a uniform system of numbering, or designating highways of interstate character within this state, and in the selection and erection of uniform danger signals and safety devices for the protection and direction of traffic."

Sec. 349.08 (1) and (2), Stats. 1959:

"(1) The state highway commission shall adopt rules for the design and installation of stop signs and yield right of way signs and for the design, installation and operation of traffic control signals where these signs and devices are permitted by statutes. In amending such rules, the state highway commission shall take into account the needs and conveniences of local authorities as well as the policy of the state to require uniform stop signs and traffic control signals.

"(2) No stop sign, yield sign or traffic control signal shall be installed unless the design, installation and use or operation of such sign or signal conforms to the rules of the state highway commission."

Pursuant to this statutory authority the state highway commission adopted for its use, effective on the date of the accident, the Manual on Uniform Traffic Control Devices for Streets and Highways prepared by the National Joint Committee on Uniform Traffic Control Devices and issued by the United States Department of Commerce, Bureau of Public Roads.

middle of the intersection where the accident occurred, respondent, by answering affidavit, avers that the warning signs were placed only 708.4 feet from the commencement of the right-angle curve. The 1961 manual, effective at the time of the accident, states in pertinent part:

"Since warning signs are primarily for the protection of the driver who is unacquainted with the road, it is very important that care be given to their locations. In rural areas warning signs should normally be placed about 750 feet in advance of the hazard or condition warned of. . . .
"The actual advance warning distance will be determined by two factors, the prevailing speed and the condition warned against. . . ."[6]

Depending upon what is considered to be the "hazard or condition warned of," the beginning or end of the right-angle turn, a substantial question of fact exists as to whether the Manual's 750-foot directive was complied with. Even if, as appellants insist, compliance with a legislative directive of the state highway commission renders the placement of a highway warning sign per se reasonable,[7] here, however, a question of fact remains as to whether the directive was, in fact, complied with.

Appellants' second argument is that the placement of a highway warning sign is a legislative or quasi-legislative decision and, similar to *Raisanen v. Milwaukee*,[8] cannot predicate liability for an accident resulting from its location. In this respect we think the trial court correctly relied upon this court's decision in *Firkus v. Rombalski*[9] in its conclusion that once appellants made the legislative or quasi-legislative decision to place the

---

[6] Manual, *supra*, footnote 5, at sec. IC–3.

[7] *See, e.g., Raisanen v. Milwaukee* (1967), 35 Wis. 2d 504, 151 N. W. 2d 129.

[8] *Id.*

[9] (1964), 25 Wis. 2d 352, 130 N. W. 2d 835. *See also: Loehe v. Fox Point* (1948), 253 Wis. 375, 34 N. W. 2d 126.

highway warning sign, they had a duty to place it and maintain it without negligence.

In *Firkus* this court affirmed a trial court's finding that the town of Hull, in Portage county, was negligent as a matter of law in failing to replace and maintain a highway arterial stop sign, with knowledge of its disappearance, for over nineteen days. Acknowledging that the town had no duty to put up the stop sign initially, this court held its failure to properly maintain the sign once it was erected, thereby causing an accident, was actionable negligence. In *Raisanen* it was held, however, that traffic signals which were functioning in accord with a predetermined plan and not in violation of any highway commission rules, did not give rise to a cause of action:

"This appeal concerns primarily the city's decision in programming its traffic control signals which decision conformed in all respects to the statutes and the rules of the highway commission, and which decision involved the choice of lawfully authorized alternatives. We fully concur with the rationale expressed by the New York court of appeals in *Weiss v. Fote* [(1960), 7 N. Y. 2d 579, 200 N. Y. Supp. 2d 409, 167 N. E. 2d 63], that lawfully authorized programming of signal lights by a city should not give rise to tort liability by a jury second-guessing the reasonableness and safety of the plan. Therefore, we hold the complaint fails to state a cause of action in negligence." [10]

The *Raisanen* holding was recently reaffirmed by this court in *Dusek v. Pierce County*,[11] a suit against the municipality for its failure to erect a highway warning sign alerting drivers of a hazardous intersection. Affirming the trial court's granting of summary judgment against the plaintiff, this court held:

"It is apparent from a review of these cases that whether or not to place a stop sign, a warning sign, or a

[10] *Raisanen v. Milwaukee, supra,* footnote 7, at page 514.
[11] (1969), 42 Wis. 2d 498, 167 N. W. 2d 246.

yield sign at the approach to a county trunk highway is a legislative decision that must be undertaken by the county board and not by the courts. At the most, what the plaintiff spells out herein is the county's failure to exercise the legislative function. Although there is a duty, as spelled out in *Firkus*, to maintain signs once they are placed, there is no duty upon the legislative body of a government to place them at a highway intersection in the first place." [12]

Although the decision as to whether or not to locate a traffic sign is not actionable, a question of fact exists as to whether the instant highway warning signs were, in fact, located pursuant to the highway commission's directives. If they were, it is clear that *Raisanen* controls and the plaintiff should not be permitted to second guess the plan's safety. If it turns out, however, that the actual sign placement did not conform with the specifications outlined in the 1961 manual, *Raisanen* offers appellants no protection. Whether or not the signs were placed in conformance with the highway commission's specifications is a question of fact. Accordingly, the trial court was correct in denying appellants' motion for summary judgment.

## *Individual liability of defendants.*

Appellants' final contention is that the trial court ought to have granted their motion for summary judgment because they cannot be individually liable in tort even if they did not place the highway warning signs in conformity with the state highway commission's legislative directive. Here again appellants advance two arguments supportive of their position. The first is that since the appellants were agents of the state highway commission under sec. 84.01 (3) (sec. 84.01 (5), Stats. 1965), their acts were the acts of such commission and, therefore, they are entitled to partake of the governmental

[12] *Id.* at page 506.

immunity enjoyed by the commission. Appellants cite no authority for this proposition. There is none. It is obvious that the state is immobile absent employees or agents to carry on its functions. All state employees are, therefore, agents of the state when performing those tasks entrusted to them. [To agree with appellants' position that they, as agents of the highway commission, ought to be allowed to partake of the governmental immunity enjoyed by that commission, this court would have to overlook the long settled law of this state, embodied in sec. 270.58,[13] that public officers or employees may be proceeded against in their official capacities.] * We conclude, therefore, that appellants, as public of-

[13] Sec. 270.58, Stats. "State and political subdivisions thereof to pay judgments taken against officers. (1) Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in his official capacity or is proceeded against as an individual because of acts committed while carrying out his duties as an officer or employe and the jury or the court finds that he acted in good faith the judgment as to damages and costs entered against the officer or employe shall be paid by the state or political subdivision of which he is an officer or employe. Regardless of the results of the litigation the governmental unit shall pay reasonable attorney's fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act in good faith, when it does not provide legal counsel to the defendant officer or employe. Deputy sheriffs in those counties where they serve not at the will of the sheriff but on civil service basis shall be covered by this subsection, except that the provision relating to payment of the judgment shall be discretionary and not mandatory. In such counties the judgment as to damages and costs may be paid by the county if approved by the county board.

"(2) Any town officer held personally liable for reimbursement of any public funds paid out in good faith pursuant to the directions of electors at any annual or special town meeting shall be reimbursed by the town for the amount of the judgment for damages and costs entered against him."

*See also: Forseth v. Sweet* (1968), 38 Wis. 2d 676, 158 N. W. 2d 370.

* Sentence clarified on rehearing. *See:* post, p. 105.

ficials, may be proceeded against for dereliction of their duties resulting in injury to another.

Appellants' second argument is that they cannot be liable in tort because the doctrine of *respondeat superior* applies only as between those parties actually performing the acts complained of and their superiors. Bypassed, according to appellants, are those employees in the middle of the supervisory chain of command. Here, appellants are essentially reasserting their earlier argument that they are not the proper parties defendant to this action. Appellants urge that *Clausen v. Eckstein* [14] supports their argument. *Clausen* does stand for the proposition that the doctrine of *respondeat superior* runs from the agent actually responsible for the act and his superiors. In that case, an injured plaintiff attempted to sue a city engineer and a sewer contractor for an alleged failure to properly warn motorists of excavations and dirt piles. We held that the trial court properly dismissed the suit against the city engineer because his duty did not include the placing of warning signs:

". . . As representative of the city, Carter had general supervision over the performance of the job but he was not engaged in laying the sewer nor doing it for his own benefit. The doctrine of *respondeat superior* does not apply to Carter because Potter, not Carter, was the ministerial agent of the city. If Potter failed to place a necessary light the liability attaching to a superior would proceed from him to the city and not to Carter. Potter was not Carter's agent or servant." [15]

But appellants' reliance upon *Clausen* is misplaced because it again assumes that the proper defendants are those members of the sign crew who actually dug the hole and implanted the signs. But here both appellants had personal nondelegable authority and responsibility

[14] (1959), 7 Wis. 2d 409, 97 N. W. 2d 201.
[15] *Id.* at page 414.

for the placement of highway warning signs. The thrust of *Clausen* is that the *respondeat superior* chain extends from those who are responsible for an act to their superiors. Here, the appellants were responsible for the proper sign placement and, therefore, are the proper parties defendant.

Appellants also argue that the trial court effectively granted their motion for summary judgment by finding that the highway warning sign was "clearly visible, in the night time, to an oncoming motorist." The court further and correctly noted, however, that this determination was not germane to the question of the safe placement of the highway warning.

*By the Court.*—Order affirmed.

The following memorandum was filed on March 27, 1973.

PER CURIAM *(on motion for rehearing).* The opinion refers to sec. 270.58, Stats., as embodying "the long settled law . . . that public officers or employees may be proceeded against in their official capacities." On rehearing, it has been called to our attention that the quoted portion of the statement could be construed as a rule of liability. It was not so intended; and were it given that blanket interpretation, it would be incorrect. Sec. 270.58 imposes an obligation on the state or municipality only if a judgment has been secured against the officer or employee. As stated in the opinion, the duty of the defendants herein was of a nondelegable, ministerial nature. These facts, if proved on trial, would impose liability not on the basis of sec. 270.58, but rather on the rationale of *Meyer v. Carman* (1955), 271 Wis. 329, 73 N. W. 2d 514.

Motion for rehearing denied without costs.