John G. KIERSTYN, Plaintiff-Appellant;†

v.

RACINE UNIFIED SCHOOL DISTRICT, Indiana Insurance Co., and Mike Farrell, Defendants-Respondents.

Court of Appeals

*No. 97–1573. Oral argument June 9, 1998.—Decided August 26, 1998.*

(Also reported in 585 N.W.2d 721.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *John G. Shannon* of *Coates, Dye, Foley & Shannon, S.C.*and *Robert Riegelman* of

*Riegelman & Mueckler, S.C.* of Racine. There was oral argument by *John G. Shannon.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Raymond J. Pollen* and *Michele M. Ford* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee. There was oral argument by *Raymond J. Pollen.*

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J.   John G. Kierstyn appeals from a summary judgment in favor of the Racine Unified School District, Indiana Insurance Co. and Mike Farrell. Judith Kierstyn, John's wife, was a teacher employed with the District for over twenty-five years and was eligible for disability benefits administered by the Wisconsin Retirement System (WRS) when she was diagnosed with cancer. Farrell, the District's benefits specialist, met with the Kierstyns and allegedly told them that Judith could not apply for disability benefits until her sick leave was exhausted. This was incorrect. Unfortunately, Judith died before her application for disability benefits had been filed; thus, the WRS determined that Kierstyn was entitled to nonannuitant survivor benefits which are significantly less than the disability survivorship annuity he may have received. Kierstyn's principal argument is that Farrell's decision to meet with the Kierstyns was discretionary; however, when the Kierstyns asked him questions, Farrell had a ministerial duty to give the correct answers. Thus, by giving the Kierstyns incorrect advice, Kierstyn maintains that Farrell breached this ministerial duty. We conclude that Farrell's advice to the Kierstyns required the exercise of governmental

discretion and he is immune from liability. Therefore, we affirm the judgment.

Initially, we note that the doctrine of public immunity assumes that the public officer was negligent. Therefore, the question before us is whether Farrell is entitled to immunity. *See Kimps v. Hill*, 187 Wis. 2d 508, 513, 523 N.W.2d 281, 284 (Ct. App. 1994), *aff'd*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996). Even so, a more thorough recitation of the facts is necessary. In 1993, Judith was diagnosed with cancer. At the time, she was a teacher employed for over twenty-five years with the District. In March, the District granted Judith a leave of absence from her teaching position. Judith's last day of work was March 19, 1993.

As an employee of the District, Judith was eligible for disability benefits administered by the WRS. The disability benefits are described in § 40.63, STATS.[1] Farrell is the benefits specialist for the District. Among his

---

[1] Section 40.63, STATS., **Disability annuities**, provides in relevant part:

**(8)** Disability annuity effective dates and amounts shall be determined in the same manner and shall be subject to the same limitations and options as retirement annuities except that separate actuarial tables may be applied and except that:

. . . .

(f) If an employer certifies that an employe's date of termination of employment is being extended past the last day worked due to any payment for accumulated sick leave, vacation or compensatory time, *a participating employe may file an application for a disability annuity as if the last day worked were the last day paid. Regardless of the application date for a disability annuity, the date of termination of employment for effective date purposes shall be deemed to be the last day for which the participant was paid,* including any payment for accumulated leave, *but if a disability annuity applicant whose application has been approved dies before the last day paid, but after the last day worked, the effective date is the date of death.*

. . . .

job duties was the obligation to "[c]ommunicate general benefit information to employees" and to "[r]espond to employees' questions about benefits, claims, and problems, etc." Farrell was not, however, a representative of the WRS. The WRS benefit book referred all questions concerning the WRS administered programs to the WRS.

On April 16, 1993, the Kierstyns met with Farrell to discuss Judith's eligibility for retirement or disability benefits in case she would decide to retire. According to Kierstyn, Farrell told them that "[they] could not apply for disability benefits until the sick days were exhausted." Farrell recalled telling them that "in order to be eligible to receive or eligible to start getting disability benefits she would have had to have exhausted her sick leave." It is uncontested that Farrell did refer them to the WRS.

On April 20, 1993, Kierstyn contacted the WRS and spoke with Linda Summers. As a result of the conversation, Kierstyn did receive a disability benefits information package from WRS, but he only read the estimate of benefits; he did not read the disability packet information sheet.

On June 9, 1993, Kierstyn again contacted the WRS. He spoke with an unidentified WRS employee

---

(h)   If an applicant dies prior to the date a decision regarding the approval or disapproval of an application for a disability benefit becomes final under sub. (5), the application is deemed to have been approved prior to the applicant's death if:

1.   The applicant was eligible for the disability benefit;

2.   The department received an application for the disability benefit in the form approved by the department and at least one written qualifying medical certification required under sub. (1) (d); and

3.   The applicant dies on or after the date which would have been the effective date of the disability benefit. [Emphasis added.]

who told him that "[he] could apply, but it won't do any good" because Judith still had sick days left.

On June 22, 1993, Kierstyn had a third meeting with Farrell regarding disability benefits. Judith's condition was critical and Kierstyn wanted advice regarding disability benefits. Farrell referred him to the WRS. Judith died on June 28, 1993, and she had not applied for disability benefits at the time of her death. Consequently, Kierstyn, as the beneficiary of Judith's retirement and employment benefits, received nonannuitant survivor benefits instead of the disability survivorship annuity which would have provided a significantly greater amount.

Kierstyn brought this suit against the District, Indiana Insurance, the District's liability insurer, and Farrell alleging common law negligence and negligent misrepresentation. The District, Indiana Insurance and Farrell moved for summary judgment on the grounds that Kierstyn could not substantiate his claims. The circuit court granted the motion and dismissed Kierstyn's complaint concluding that Farrell was performing a discretionary function entitling him to public immunity. Kierstyn appeals.

We review a motion for summary judgment using the same methodology as the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Managment, Inc.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* Summary judgment presents a question of law which we review de novo. *See id.* at 497, 536 N.W.2d at 182.

■ Public employees are immune from personal liability for injuries resulting from the negligent performance of a discretionary act within the scope of their public office. *See Santiago v. Ware*, 205 Wis. 2d 295, 338, 556 N.W.2d 356, 373 (Ct. App. 1996), *cert. denied*, 117 S. Ct. 2435 (1997). However, this general rule is subject to exceptions which represent a judicial balance struck between "the need of public officers to perform their functions freely against the right of an aggrieved party to seek redress." *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610, 621 (1976). An exception may exist where

> the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of judgment or discretion, *see, e.g., Lister*, 72 Wis. 2d at 300–01, [240 N.W.2d at 621–22]; or (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion, *see, e.g., Cords* [*v. Anderson*], 80 Wis. 2d [525,] 541, [259 N.W.2d 672, 679 (1977)]. Additionally, the doctrine of immunity may be inapplicable where a public officer's challenged decision involves the exercise of discretion but the discretion exercised is not governmental, *i.e.*, does not require the application of statutes to facts nor a subjective evaluation of the law. *See, e.g., Scarpaci* [*v. Milwaukee County*], 96 Wis. 2d [663,] 686–88, [292 N.W.2d 816, 827 (1980)].

*C.L. v. Olson*, 143 Wis. 2d 701, 717–18, 422 N.W.2d 614, 620 (1988).

Kierstyn's argument, as we understand it, is that the third exception is applicable. Although Kierstyn concedes that Farrell's decision to meet with him and his wife was discretionary, he argues that when they asked Farrell specific questions Farrell had an absolute, certain and imperative duty to correctly interpret the applicable statutes. We disagree.

Farrell was a benefits specialist employed by the District. Included in his job description was the responsibility to advise District employees regarding their benefits. As a result, he was sometimes required to interpret the statutes, rules and regulations pertaining to employee benefits. As a public employee, Farrell was immune from liability for injuries resulting from the performance of any discretionary act within the scope of his employment. *See Santiago*, 205 Wis. 2d at 338, 556 N.W.2d at 373.

In this case, Farrell's job description obligated him to advise the Kierstyns regarding Judith's eligibility for disability benefits. As such, Farrell was called upon to interpret the applicable law and regulations and apply them to Judith's particular situation. It is an exercise of governmental discretion when a governmental employee is required to apply statutes, rules or regulations to facts or to subjectively evaluate the law. *See Olson*, 143 Wis. 2d at 717–18, 422 N.W.2d at 620. By definition, acts that require the determination of what law, rule or regulation is to be followed or the application of a law, rule or regulation to a particular set of facts are nonministerial acts. *See Lifer v. Raymond*, 80 Wis. 2d 503, 511–12, 259 N.W.2d 537, 541–42 (1977).

This case is beguiling because both parties agree that Farrell gave incorrect advice on a matter which was governed by clear and unambiguous law.[2] That does not, however, alter the fact that interpreting a statute calls for the exercise of judgment, i.e., discretion. Judges and justices know that even when a court ultimately declares a statute or regulation to be clear and unambiguous, the resolution of that question can sometimes prove difficult and contentious. Indeed, some courts have even split on that question. For example, in *State v. Setagord*, 211 Wis. 2d 397, 415, 565 N.W.2d 506, 513 (1997), the supreme court concluded that § 973.014(1)(b), STATS., was a plain and unambiguous statute, but noted that the court of appeals had previously concluded that the statute was ambiguous. Moreover, Justice William A. Bablitch dissented in *Setagord*, concluding that the statute was ambiguous. *See id.* at 433, 565 N.W.2d at 521.

In short, the interpretation of laws, rules and regulations is an art, not a science. It certainly does not present a situation in which duty "is absolute, certain and imperative, involving merely the performance of a specific task . . . with such certainty that nothing remains for judgment or discretion." *Lister*, 72 Wis. 2d at 301, 240 N.W.2d at 622. Here, Farrell was exercising his judgment in selecting and applying the relevant provisions of the statute to the facts presented by the Kierstyns and that exercise is protected by the doctrine

[2] Although the parties agree that § 40.63, STATS., is clear and unambiguous, it is not a statute which is easily understood upon an initial reading and its meaning does not leap off the page.

of governmental immunity. *See Santiago*, 205 Wis. 2d at 340, 556 N.W.2d at 373–74.[3]

*By the Court.*—Judgment affirmed.

BROWN, J. *(dissenting)*. Because the nature of the discretion Farrell exercised in advising the Kierstyns was professional rather than governmental, immunity is inapplicable in this case. Thus, I dissent.

*Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), sheds light on why Farrell should not be protected in the present case. There, a medical examiner performed an autopsy on a girl despite her parents' objections. The court explained why the examiner was not protected from liability by governmental immunity:

> The defendants' acts in performing the actual procedure of an autopsy are discretionary in nature, but the discretion is medical, not governmental. The theory underlying the creation of immunity for government officials is that immunity will foster the fearless, vigorous and effective administration of policies of the government. That theory is not applicable to the exercise of normal medical discretion during an autopsy. The theory behind immunity for quasi-judicial decisions does not dic-

---

[3] The dissent relies upon *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), for the proposition that immunity does not protect nongovernmental decisions made by professionals. The dissent attempts to expand *Scarpaci* beyond the facts of that case, something the courts have repeatedly refused to do. *See Bauder v. Delavan-Darien Sch. Dist.*, 207 Wis. 2d 310, 317, 558 N.W.2d 881, 883 (Ct. App. 1996) ("[T]his court has limited the *Scarpaci* exception to cases involving medical discretion."); *Stann v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775, 779 (Ct. App. 1991).

tate an extension of the immunity to cover the medical decisions of medical personnel employed by a governmental body.

*Id.* at 686–87, 292 N.W.2d at 827. Thus, immunity does not protect nongovernmental decisions made by professionals within their business arena just because they happen to be employed by the government.

Farrell's bad advice to the Kierstyns is similar to the medical examiner's bad autopsy in *Scarpaci*. Whatever discretion Farrell exercised in advising the Kierstyns was not governmental in nature: it was the type of professional discretion exercised by benefits specialists whenever they advise clients, whether they work for the government or not. That Farrell had to apply a statute to the Kierstyns' situation does not change the nature of his work. He is a benefits specialist, not a judge, city council member or county functionary. His job does not involve the "determination of fundamental governmental policy." *See id.* at 687, 292 N.W.2d at 827 (quoting RESTATEMENT (SECOND) OF TORTS § 895B cmt. d (1977) for explanation of when immunity is appropriate). Just as the examiner's discretion in *Scarpaci* remained medical despite the fact that he was employed by the county, Farrell's discretion was professional, despite the fact that he was employed by the District. The mere fact that he is employed by a public entity should not protect him from liability when his professional performance is shoddy.

The majority asserts that *Scarpaci* is strictly limited to cases involving medical discretion. *See* majority op. n.3. That *Bauder* and *Stann* declined to extend *Scarpaci* does not mean that it can never apply outside the arena of medical decisions. *See Stann v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775, 779 (Ct.

App. 1991) (noting that cases discussing the medical discretion exception are restricted to their facts and have not been applied in other settings). Rather, I see the supreme court recognizing in *Scarpaci* that a doctor has a duty separate and apart from his duty as a government employee by virtue of his membership in the medical profession. But there is nothing magical about physicians that limits the *Scarpaci* result. Whether *Scarpaci* covers other professionals should be determined on a case-by-case basis. In *Stann*, we declined to extend the immunity exception to a park planner because there was not the same type of professional discretion present as in *Scarpaci*. Similarly, the one-on-one professional-client relationship requiring the exercise of expertise, personal care and advice was missing in *Bauder v. Delavan-Darien School District*, 207 Wis. 2d 310, 558 N.W.2d 881 (Ct. App. 1996), where the decision at issue was to move a soccer class inside due to inclement weather. Our reluctance to extend *Scarpaci* in those cases, where the relationship between the professional and his individual clients was not present, should not preclude us from applying the *Scarpaci* exception to cases where it makes sense—such as the present case. Like the doctor in *Scarpaci*, Farrell had a professional duty to advise his clients well, a duty outside the scope of his function as a government employee. Like the doctor in *Scarpaci*, he should be held accountable for poor professional performance.