John G. KIERSTYN, Plaintiff-Appellant-Petitioner,

v.

RACINE UNIFIED SCHOOL DISTRICT, Indiana Insurance
Company and Mike Farrell, Defendants-Respondents.

Supreme Court

*No. 97–1573. Oral argument May 4, 1999.—Decided July 9,
1999.*

(Also reported in 596 N.W.2d 417.)

For the plaintiff-appellant-petitioner there was a brief by *John G. Shannon* and *Dye, Foley, Krohn & Shannon, S.C.*, Racine and oral argument by *John G. Shannon.*

For the defendants-respondents there was a brief by *Raymond J. Pollen, Michele M. Ford* and *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee and oral argument by *Raymond J. Pollen.*

¶ 1. ANN WALSH BRADLEY, J. The Petitioner, John Kierstyn (Kierstyn), seeks review of a published decision of the court of appeals that affirmed

the circuit court's grant of summary judgment in favor of the Racine Unified School District (the District).[1] Kierstyn argues that the District and its employee benefits specialist are not immune from suit under Wis. Stat. § 893.80(4) when the employee gave incorrect information regarding disability benefits. Because we determine that the employee's act does not fit any exception to public officer immunity, we affirm the court of appeals.

¶ 2. For purposes of this summary judgment motion, the facts are not in dispute. Both John and Judith Kierstyn (collectively, the Kierstyns) were employed by the District for many years: John Kierstyn (Kierstyn) as a librarian for over 27 years and Judith Kierstyn (Mrs. Kierstyn) as a teacher for over 25 years. Mrs. Kierstyn was diagnosed with cancer in the early part of 1993. By March of 1993 Mrs. Kierstyn became incapable of continuing work and took a medical leave of absence. From March until her death in late June of that year, Mrs. Kierstyn received her regular teacher's salary through sick days she had accumulated over the course of her tenure as an employee of the District.

¶ 3. Mrs. Kierstyn received benefits both as a union employee with the District and as a municipal employee with the Wisconsin Retirement System (WRS). *See* Wis. Stat. ch. 40. In April, shortly after Mrs. Kierstyn ceased working, the Kierstyns met with a benefits specialist employed by the District, Mike Farrell, in order to discover what disability benefits Mrs. Kierstyn was entitled to receive.

---

[1] *Kierstyn v. Racine Unified School Dist.*, 221 Wis. 2d 563, 585 N.W.2d 721 (Ct. App. 1998) (affirming decision and order of Circuit Court for Racine County, Hon. Wayne J. Marik, presiding).

¶ 4. Farrell had been employed by the District since 1991. As a benefits specialist he provided general information to District employees about their employment benefits and was often the first contact for employees who sought such information. Farrell was authorized to give the District's employees information about their union benefits. He was not, however, an agent of the WRS and could not authoritatively represent to District employees what WRS benefits they were entitled to receive. Notwithstanding this fact, Farrell was generally aware of the WRS disability benefits, had pamphlets from WRS relaying information about WRS programs in his office, had WRS computer software that he used to provide benefit estimates to the District's employees, and knew of persons at the WRS whom a District employee could contact in order to obtain specific WRS benefit information.

¶ 5. At the April meeting with the Kierstyns, Farrell misstated that Mrs. Kierstyn could only apply for WRS disability benefits upon the depletion of all of her available sick leave.[2] This information was incorrect.[3] Mrs. Kierstyn could have applied for those

---

[2] In actuality, Farrell contends that he correctly told the Kierstyns that while Mrs. Kierstyn could apply for those benefits at the time of the April meeting, she would not be eligible to receive those benefits until her sick leave was exhausted. For purposes of summary judgment, the District invited the court to assume that Kierstyn's version of the facts is correct.

[3] For present purposes, a WRS participant could receive one of two types of disability benefits: a disability survivorship annuity and a non-annuitant survivor benefit. The former provided significantly greater financial benefits to the participant. However, in order to receive the disability survivorship annuity, WRS participants needed to have applied prior to their death. It was the survivorship annuity that the Kierstyns were seeking to receive.

benefits when she ceased working in March. However, she would not have been eligible to receive those benefits until she exhausted her available sick leave. Farrell also informed the Kierstyns that WRS would have more specific information about these matters and instructed them to contact the WRS directly.

¶ 6. The Kierstyns did contact the WRS, which mailed to them benefit estimates tailored to Mrs. Kierstyn. In addition to the estimates, the mailing included an application for disability benefits with instructions and a 16-page brochure explaining WRS disability benefits. The instructions read, in pertinent part:

### DEATH BEFORE DISABILITY BENEFIT APPROVAL

If you are an active employe or on leave of absence on or after August 15, 1991 and die before the Board approves your benefit, your disability annuity will be granted if prior to your death we have received your application and one Medical Report certifying your disability. . . .It is therefore very important that the Medical Reports be submitted as quickly as possible. The department must also receive your employer's certification that you ceased employment due to your disability before your disability benefit can be approved.

Whether or not your disability benefit is approved can have a substantial impact on the amount of the death benefits payable upon your death. Death benefits from a disability benefit will be based on the annuity option you select. You may contact the department for further information about how death benefits are calculated.

¶ 7. Aside from glancing at the estimates, Kierstyn did not read the information he received from the

WRS. Mrs. Kierstyn did not apply for disability benefits at that time.

¶ 8. About a week before Mrs. Kierstyn's death, Kierstyn again met with Farrell. By this date, there was little doubt that Mrs. Kierstyn soon would die. Kierstyn, still under the incorrect assumption that Mrs. Kierstyn could not file for disability benefits until her sick days were exhausted, wanted to know of any available method to rid Mrs. Kierstyn of her remaining sick days. Farrell again incorrectly stated that the sick leave must be completely exhausted before filing the application with WRS.[4]

¶ 9. After Mrs. Kierstyn's death, Kierstyn filed an application for the disability benefits. Because the application had not been filed prior to her death, Kierstyn was only entitled to a non-annuitant survivor benefit and not to the more financially generous disability survivorship annuity.

¶ 10. Kierstyn filed suit, alleging that Farrell and the District were liable for common law negligence and negligent misrepresentation. The District filed a motion for summary judgment, contending that it and Farrell were immune from suit under Wis. Stat. § 893.80(4) (1997–98).[5] The circuit court granted that motion, concluding that Farrell's act of giving informa-

---

[4] Much like his earlier statement, Farrell disputes that he gave this incorrect information.

[5] Wisconsin Stat. 893.80(4) reads as follows:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

tion was a discretionary act rather than a ministerial one.

¶ 11. Kierstyn appealed and the court of appeals affirmed in a 2–1 decision. The court of appeals concluded that Farrell's giving of benefit advice was a "governmental" act, so he retained immunity as a municipal employee under this court's decision in *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980). Judge Brown dissented, concluding that the act of advising a "client" in an intimate setting was not "governmental" but rather "professional" in nature and therefore was an act subject to liability. Kierstyn petitioned this court for review.

¶ 12. It is well settled that when this court reviews a motion for summary judgment it applies the same standards as the circuit court. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). In this case we are asked to determine whether Farrell, though negligent, is entitled to immunity as a municipal employee under Wis. Stat. § 893.80. This application of a set of facts to a legal standard is a question of law that we review independently of the legal determinations rendered by the circuit court and court of appeals. *Miller v. Thomack*, 210 Wis. 2d 650, 658, 563 N.W.2d 891 (1997).

¶ 13. Public officers or employees enjoy immunity from liability for injuries resulting from the performance of any discretionary act within the scope of their governmental employment.[6] *Barillari v. City of*

---

All further references to the Wisconsin statutes are to the 1997–98 version unless otherwise noted.

[6] Kierstyn apparently does not differentiate between the District's conduct and Farrell's conduct. That is to say, Kierstyn

*Milwaukee*, 194 Wis. 2d 247, 257, 533 N.W.2d 759 (1995); *C.L. v. Olson*, 143 Wis. 2d 701, 710, 422 N.W.2d 614 (1988); *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). This rule applies regardless of whether the public official is employed by the state or by a political subdivision of the state, such as a municipality or school district. *Lifer v. Raymond*, 80 Wis. 2d 503, 511–12, 259 N.W.2d 537 (1977).

¶ 14. Public officer immunity traces its origins to the common law and is separate and distinct from the constitutional guarantee of sovereign immunity, although the distinction is often overlooked.[7] As a derivation of the common law, governmental immunity is founded upon policy considerations that strike a balance between "the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress." *Lister*, 72 Wis. 2d at 300. Those policy considerations focus largely on the protection of

does not argue that the District's actions ought to be analyzed separately from Farrell's so that theoretically the District could be subject to immunity while Farrell could not, or vice versa. *See generally Estate of Cavanaugh v. Andrade*, 202 Wis. 2d 290, 550 N.W.2d 103 (1996) (drawing distinction between political subdivision's conduct and public official's conduct).

[7] As we said years ago in *Lister v. Board of Regents*, 72 Wis. 2d Wis. 2d 282, 298–99, 240 N.W.2d 610 (1976):

> The doctrine of sovereign immunity and the principle which extends an immunity to public officers from civil liability for damages are two separate and distinct concepts. . .[T]he state's sovereign immunity from suit is procedural in nature and arises from the state constitution. The immunity afforded public officers with respect to the performance of their official functions, on the other hand, is a substantive limitation on their personal liability for damages and is common law. It does not derive, as the language in some cases would imply, from the state's sovereign immunity under art. IV, sec. 27 of the Wisconsin Constitution. . . .

the public purse against legal action and on the restraint of public officials through political rather than judicial means. As we identified in *Lister*, 72 Wis. 2d at 299, those considerations include:

> (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office. *Id.* at 299.

¶ 15. As outlined in Wis. Stat. § 893.80(4), governmental immunity relieves both a political subdivision and public officials from acts done pursuant to legislative, judicial, quasi-legislative, or quasi-judicial capacities. To describe an activity as quasi-judicial or quasi-legislative is to say that the activity involves the exercise of discretion. *Lister*, 72 Wis. 2d at 299; *Spencer v. Brown County*, 215 Wis. 2d 641, 647, 573 N.W.2d 222 (Ct. App. 1997).

¶ 16. However, immunity under Wis. Stat. § 893.80 is not absolute. Over the years, this court has recognized four exceptions to public officer immunity. Since Kierstyn contends that Farrell's actions fall within three of the four exceptions, we address each of those three exceptions separately below.[8]

---

[8] The fourth exception, and the one that Kierstyn does not suggest Farrell's conduct constitutes, removes immunity when a public officer engages in negligent conduct that is "malicious,

## Ministerial Duty

¶ 17. For at least a century, the law has drawn a distinction between discretionary and ministerial acts, shielding the performer of the former but exposing the latter to liability. *Barillari*, 194 Wis. 2d at 257–58; *Cords v. Ehly*, 62 Wis. 2d 31, 41, 214 N.W.2d 432 (1974); *Druecker v. Salomon*, 21 Wis. 628 (*621), 637 (*630) (1867). The oft-cited summation of this most common exception was stated initially in *Lister*, 72 Wis. 2d at 301:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

¶ 18. The difficulty Kierstyn faces with this exception is that Farrell was under no duty that was "absolute, certain and imperative" which "impose[d], prescribe[d] and define[d] the time, mode and occasion for its performance." Kierstyn has not pointed to any statutory obligation Farrell faced under Wisconsin law to advise the District's employees regarding their WRS benefits or even any similar obligation he faced under his contractual arrangement with the District. *See Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 539, 247 N.W.2d 132 (1976) (ministerial duties can arise by statute or by contract).

---

willful and intentional." *C.L. v. Olson*, 143 Wis. 2d 701, 710–11, 422 N.W.2d 614 (1988); *Ibrahim v. Samore*, 118 Wis. 2d 720, 728, 348 N.W.2d 554 (1984).

¶ 19. In actuality, Kierstyn has not seriously argued that Farrell was legally obligated to provide WRS benefit information to employees of the District. Rather, he has posited all along that Farrell's conduct should be considered ministerial because Farrell's incorrect information resulted from his errant reading of a clear and unambiguous statute.

■

¶ 20. Kierstyn acknowledges that typically a public officer, such as Farrell, is clothed in immunity when that officer applies statutes to a given set of facts, such as interpreting how statutes will apply to a particular person. *Olson*, 143 Wis. 2d at 717–18. He argues, however, that this is not a typical case because judgment and interpretation, the hallmarks of discretion, are not implicated where the statute is unambiguous. His argument, as we understand it, is that one does not "interpret" an unambiguous statute, one follows it.

¶ 21. We cannot accept Kierstyn's argument that an unambiguous statute creates a ministerial duty. As noted above, a public officer's duty must arise from some obligation created by law. The District was under no legal obligation to hire a benefits specialist. In like fashion, Farrell was under no legal obligation to offer advice about WRS benefits to employees of the District. *See Olson*, 143 Wis. 2d at 722; *Lifer*, 80 Wis. 2d at 510; *c.f. Estate of Cavanaugh v. Andrade*, 202 Wis. 2d 290, 300–01, 550 N.W.2d 103 (1996); *Turner v. City of Milwaukee*, 193 Wis. 2d 412, 421–22, 535 N.W.2d 15 (Ct. App. 1995).

¶ 22. Kierstyn does not end his argument there. Rather, he maintains that even if Farrell was under no ministerial duty to provide WRS information to the District's employees in the first instance, his choosing

to do so created a ministerial duty to provide the correct information.

¶ 23. It is true that in a select number of cases we have concluded that once public officers choose in their discretion to act, they are bound by a ministerial duty to act in a certain manner. For example, in a series of cases involving the erection of highway road signs, this court determined that once public officers make the discretionary decision to place a highway warning sign, they have a ministerial duty to place that sign according to the specific administrative rules for placement. *Chart v. Dvorak*, 57 Wis. 2d 92, 102, 203 N.W.2d 673 (1973). Also, in *Major v. Milwaukee County*, 196 Wis. 2d 939, 944–45, 539 N.W.2d 472 (Ct. App. 1995), the court of appeals concluded that, while a county had discretion both to sell a parcel of property and to negotiate the terms of the sale, once it signed a sales contract the county had a ministerial duty to adhere to the provisions of the contract.

¶ 24. These cases, however, provide little aid to Kierstyn's cause because they are readily distinguishable. The public officers in *Chart* and *Major* were deemed to have a ministerial duty not because they elected to act. They were deemed to have a ministerial duty because they elected to act and the subject matter of their action imposed specific legal obligations on the manner in which they were to act. That is to say, these public officers did not have to act at all—but if they did choose to act, they faced a specific legal obligation to do so in a prescribed manner.

¶ 25. As a result, while the public officers in *Chart* were not legally obligated to erect road signs in any particular place, once they did choose to erect signs, they were obligated to erect those signs in the manner specified by the rules and statutes. *Chart*, 57

Wis. 2d at 99. *See also Raisanen v. City of Milwaukee*, 35 Wis. 2d 504, 513–14, 151 N.W.2d 129 (1967). Likewise, while the public officers in *Major* were not obligated to sell county property or were free to sell it on their own terms, once they signed a sales contract they were under a ministerial duty to follow the terms of that contract. *Major*, 196 Wis. 2d at 944–45. This same principle has been followed in other contexts as well. *See, e.g., Allstate Ins. Co. v. Metropolitan Sewerage Comm.*, 80 Wis. 2d 10, 15–17, 258 N.W.2d 148 (1977) (design of sewer systems is discretionary; construction of sewers according to the design is ministerial).

¶ 26. Here, Farrell was under no duty to provide WRS benefit information in the first instance. Similarly, once Farrell elected to provide some WRS benefit information, he was under no legal duty to do so in a particular manner or according to any particular rules. *See Barillari*, 194 Wis. 2d at 261–62.

¶ 27. In the end, Kierstyn's argument really is not that the statute imposed any duty on Farrell to provide information, only that Farrell negligently interpreted the clear provisions of the statute. Kierstyn focuses his ministerial duty analysis not on any obligation the statute imposed on Farrell, but rather on the statute's clarity.

¶ 28. However, to argue that the statute is clear is to miss the point of immunity. As the circuit court aptly stated:

> [Kierstyn really argues] that Farrell had a duty to exercise due care and a duty not to be negligent. That, however, is precisely what the doctrine of immunity insulates a party from, *i.e.*, liability due to the fact that they have been negligent. The fact that certain conduct may have been negligent does

not transform that conduct into a breach of a ministerial duty. The existence of a duty of care does not necessarily imply that the duty was ministerial. Consideration of the issue of immunity implies that the party was or may have been negligent. If they were not, they would not need to seek the protection of immunity.

Immunity presupposes negligence and has no reason for existence without it. *Kimps v. Hill*, 200 Wis. 2d 1, 11, 546 N.W.2d 151 (1996).

¶ 29. The statute may have been clear and Farrell may have negligently applied it, but the statute did not direct Farrell to act in any manner. Farrell was under no ministerial duty.

## Known Danger

¶ 30. Even where a public officer's duty is not proscribed in its time, mode, and occasion so that nothing remains for the officer's judgment, the factual circumstances of the case may nevertheless clearly require a public officer to act. *Cords v. Anderson*, 80 Wis. 2d 525, 541–42, 259 N.W.2d 672 (1977). This exception is a very limited one, having rarely been asserted successfully.

¶ 31. The facts of *Anderson* best exemplify the type of extraordinary events that will be necessary in order to trigger the exception. They also demonstrate why this case is not sufficiently extraordinary:

> [In *Anderson*,] the manager of a state-owned park was held subject to liability for negligence by failing to take steps to warn of the dangerous condition posed by a path open for night hiking that ran within inches of a precipitous drop into a 90-foot gorge. We concluded that because the park manager

knew of the dangerous terrain, was in a position to do something about it, yet did nothing, he was not immune to liability. Our holding in that case was based on facts that presented a "duty so clear and so absolute that it falls within the definition of a ministerial duty."

*Kimps*, 200 Wis. 2d at 15 (citations omitted). In light of these facts, we concluded that

[t]here comes a time when "the buck stops." Anderson knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty.

*Anderson*, 80 Wis. 2d at 541.

¶ 32. Similarly, in *Domino v. Walworth County*, 118 Wis. 2d 488, 490–92, 347 N.W.2d 917 (Ct. App. 1984), the court of appeals concluded that a police dispatcher informed of a downed tree was under a "duty so clear and absolute" that the dispatcher was legally obligated to send a police squad to investigate the situation. As a result, a person injured when his motorcycle hit the downed tree could maintain a suit against the government.

¶ 33. As we said in *Olson*, 143 Wis. 2d at 715, the known danger exception is effective only in those cases where the "nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." By way of comparison, we cannot say that the possibility of reduced disability benefits was "of such force" to impose a duty on Farrell to act. We do not believe that the necessity to give benefit advice reasonably resembles either the necessity to warn of a 90-foot cliff or the necessity to

investigate a fallen tree blocking a roadway. *See Kimps*, 200 Wis. 2d at 15–16. *See also Bauder v. Delavan-Darien School Dist.*, 207 Wis. 2d 310, 315–16, 558 N.W.2d 881 (Ct. App. 1996) (using a deflated soccer ball in physical education class does not present known danger of injury).

## The *Scarpaci* Rule

¶ 34. Finally, Kierstyn argues that even if Farrell's duty was discretionary and did not present a known danger, Farrell is not entitled to immunity because any discretion on his part was "professional" in nature. This argument is based on our decision in *Scarpaci*, 96 Wis. 2d at 686–88.

¶ 35. In *Scarpaci*, we decided that discretionary acts performed by public officers would only be clothed in immunity if those acts involved "governmental discretion." As a result, we concluded that a county medical examiner's decision to perform an autopsy was an exercise of governmental discretion. *Id.* at 683–85. However, this court concluded that the medical examiner was not entitled to immunity for any negligence in his performance of the autopsy. *Id.* at 686. While we recognized that the medical examiner's method of performing the autopsy was discretionary in nature, we concluded that the "discretion [was] medical, not governmental" and therefore not clothed in immunity. *Id.*

¶ 36. Since 1981 when *Scarpaci* was decided, this exception has been successfully asserted on only two other occasions, both occurring in the medical context. *Protic v. Castle Co.*, 132 Wis. 2d 364, 369–70, 392 N.W.2d 119 (Ct. App. 1986) (post-surgical care medical discretion); *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 67–69, 370 N.W.2d 803 (Ct. App. 1985) (psychiatric diagnosis and treatment medical discretion). In *Stann*

97

*v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775 (Ct. App. 1991), the court concluded that *Scarpaci*'s rule extends no further than the medical setting.

¶ 37. Kierstyn argues that *Stann*'s limitation is an artificial one. He posits that no legitimate reason exists to limit *Scarpaci*'s rationale solely to medical decisions. *See also Kierstyn v. Racine Unified School Dist.*, 221 Wis. 2d 563, 570, 585 N.W.2d 721 (Ct. App. 1998) (Brown, J., dissenting). Rather, Kierstyn argues that *Scarpaci* ought to be interpreted as exempting "professional" discretion from immunity. *See also C.L. v. Olson*, 140 Wis. 2d 224, 231, 409 N.W.2d 156 (Ct. App. 1987), *aff'd*, 143 Wis. 2d 701, 422 N.W.2d 614 (1988); *but see Kimps*, 200 Wis. 2d at 17–18.

¶ 38. We have previously declined the invitation to revisit the *Stann* rule. *Kimps*, 200 Wis. 2d at 19–20. We now do so twice, as it is unnecessary to reach the issue in order to resolve this case. Even if we were inclined to conclude that *Scarpaci* should be interpreted as excluding a public officer's "professional" discretionary acts from immunity, we would not include a benefits specialist within that category.

¶ 39. With the inclusion of a benefits specialist, Kierstyn's concept of a "professional" becomes the exception that would swallow the rule. Certainly Farrell had expertise in a particularized area; after all, he was a benefits *specialist*. However, if *Scarpaci*'s rule extends beyond the medical profession, we are confident that the term "professional" could not have as vacuous a meaning as Kierstyn would have it.

¶ 40. In the modern parlance, the professions extend beyond theology, law, and medicine. However, a profession is generally thought of in ways similar to the Webster's Dictionary definition of it:

a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of public service.

*Webster's Third New Int'l Dictionary* 1811 (unabr. 1993) (quoted in *State v. Kittilstad,* 222 Wis. 2d 204, 214, 585 N.W.2d 925 (Ct. App. 1998)); *see also Black's Law Dictionary* 1089–90 (5th ed. 1979). A benefits specialist for the District, as that position was described in a job posting in the record, would not fall within such a definition.[9] As a result, even if we were to read *Scarpaci* as erasing immunity for acts of professional discretion, this expansion would be of no avail to Kierstyn.

¶ 41. In sum, Kierstyn has not shown that Farrell's conduct fits any of the exceptions to public officer

[9] That posting read in relevant part:

POSITION PURPOSE: Plan, organize and supervise employee benefit programs in the district both directly and in cooperation with other administrators. This position reports to the Assistant Superintendent, Personnel Services.

QUALIFICATIONS: Bachelors Degree with at least two years experience in Human Resources with special emphasis in benefits management.

ADDITIONAL DESIRED EXPERIENCE/TRAINING: Claims processing experience. Computer information reporting and analysis experience. Benefits/counseling experience. Knowledge of state and federal programs e.g., Unemployment Compensation, Worker's Compensation, Social Security, COBRA, and Wisconsin Retirement System.

immunity. This case represents the difficulty that can be associated with public officer immunity. By all accounts, Kierstyn is denied his opportunity to further pursue a legal remedy solely because Farrell happened to be an employee of a municipality. Such a result is harsh; however, such a result is the reflection of the balancing of various policy considerations. Ultimately, such a result is required by Wis. Stat. § 893.80(4) and the cases that have interpreted the statute. Because we conclude that Farrell is entitled to immunity, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 42. WILLIAM A. BABLITCH, J. (*dissenting*). This is a very harsh result for Mr. Kierstyn. It is also, in my opinion, an incorrect result.

¶ 43. The Kierstyns asked a public official for advice, the answer to which was in the statutes. The public official gave them an erroneous answer. The Kierstyns, unfortunately, followed that advice. It was a very costly error to Mr. Kierstyn: the difference between approximately $1100 a month, and $400 a month for the rest of his life. The majority says Mr. Kierstyn will have to live with it.

¶ 44. In this case, the benefits specialist, Michael Farrell, undertook to do what he had no legal obligation to do—give the Kierstyns information regarding WRS benefits. Because the statute regarding when to apply for WRS disability benefits leaves no room for interpretation, I would conclude that once Farrell, in his discretion, decided to give the information, he had a ministerial duty to give correct information. Accordingly, I dissent.

¶ 45. As the majority accurately states, public officers or employees are immune from liability for injuries arising from any discretionary act which the officer or employee performs as part of his or her governmental employment. Majority op. at 88. The majority also accurately points out that there are exceptions to public officer or employee immunity. Because I conclude that Farrell was performing a ministerial rather than discretionary action in giving the Kierstyns information regarding when to apply for WRS disability benefits, I believe his actions fall within an exception to public official immunity.

¶ 46. As explained in the majority opinion:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.

Majority op. at 91 (quoting *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)). However, if a public officer or employee chooses, in his or her discretion, to undertake a task, he or she may have a ministerial duty to carry out that task in accord with given rules or statutes. *Chart v. Dvorak*, 57 Wis. 2d 92, 100–01, 203 N.W.2d 673 (1973) (relying on *Firkus v. Rombalski*, 25 Wis. 2d 352, 130 N.W.2d 835 (1964)). For example, in *Chart*, the court determined that once the highway commissioners made the discretionary decision to place a highway warning sign, "they had the duty to place it and maintain it without negligence." *Chart*, 57 Wis. 2d at 100–01.

¶ 47. Similarly, in *Major v. County of Milwaukee*, 196 Wis. 2d 939, 539 N.W.2d 472 (Ct. App. 1995), the

court of appeals determined that Milwaukee County had discretion whether to sell a parcel of property, but "[o]nce those terms of sale were set and reified in the contract,. . .the County was under a ministerial duty to comply." *Id.* at 944–45. The County was under an "absolute, certain and imperative duty" to not make a representation that it had no knowledge of the presence of toxic materials or conditions affecting the property unless such representation was true. *Id.* at 945.

¶ 48. The case now before the court presents a similar situation. The majority is correct to point out that the District had no legal obligation to hire a benefits specialist and the benefits specialist, once hired, had no legal obligation to provide District employees with information regarding WRS benefits. Majority op. at 92. However, as in *Chart* and *Major*, once the benefits specialist chose, in his discretion, to provide such information, and where the statute leaves no room for interpretation, he had a ministerial duty to give the unambiguous information provided in the statute.

¶ 49. The majority attempts to distinguish *Chart* and *Major* by asserting that once the governmental officials in these cases chose to act, they had "a specific legal obligation to do so in a proscribed manner." Majority op. at 93. In *Chart*, once the public officers chose to erect certain signs, they were obligated to do so in accord with the manner specified by certain rules and statutes. *Id.* In *Major*, once the public officers chose to sell a parcel of land and entered a sales contract, they were under a ministerial duty to follow the terms of the contract. *Id.* The majority attempts to reason in this case, that once Farrell chose to provide benefits information to the Kierstyns "he was under no legal duty to do so in a particular manner or according

to any particular rules." *Id.* The majority reaches its conclusion despite the very clear directive of Wis. Stat. § 40.63(8)(f) (reprinted below)[1] that a participant in the WRS may apply for a disability annuity as if the last day worked were the last day paid though the employee continues to receive payment for sick time after the last day worked. The majority reaches its conclusion despite the very clear directive of § 40.63(8)(h) (reprinted below)[2] that an application for disability benefits is deemed valid only if the department receives the application before the applicant's death. In this case, the unambiguous statutes,

---

[1] Wisconsin Stat. § 40.63(8)(f) provides:

(f) If an employer certifies that an employe's date of termination of employment is being extended past the last day worked due to any payment for accumulated sick leave, vacation or compensatory time, a participating employe may file an application for a disability annuity as if the last day worked were the last day paid. Regardless of the application date for a disability annuity, the date of termination of employment for effective date purposes shall be deemed to be the last day for which the participant was paid, including any payment for accumulated leave, but if a disability annuity application whose application has been approved dies before the last day paid, but after the last day worked, the effective date is the date of death.

[2] Wisconsin Stat. § 40.63(8)(h) provides:

(h) If an applicant dies prior to the date a decision regarding the approval or disapproval of an application for a disability benefit becomes final under sub. (5), the application is deemed to have been approved prior to the applicant's death if:

1. The applicant was eligible for the disability benefit;

2. The department received an application for the disability benefit in the form approved by the department and at least one written qualifying medical certification required under sub. (1)(d); and

3. The applicant dies on or after the date which would have been the effective date of the disability benefit.

103

§ 40.63(8)(f) and (h), leave nothing for judgment or discretion. *Cf. Lister*, 72 Wis. 2d at 301.

¶ 50. I do not see the distinction that the majority attempts to create between this case and *Chart* and *Major*. In *Chart*, the public officials had no legal obligation to erect the highway sign; in *Major*, the public officials had no legal obligation to sell the parcel of land; in the present case, the benefits specialist had no legal obligation to provide information regarding when to apply for WRS disability benefits to the Kierstyns. In each case the decision to take on the specific task was discretionary.

¶ 51. Similarly, in each case the performance of the undertaken task was ministerial. In *Chart*, the court determined that it was a factual question whether the placement of the sign complied with the Manual on Uniform Traffic Control Devices for Streets and Highways which required that signs be placed " 'about 750 feet in advance of the hazard or condition warned of. . . .' " *Chart*, 57 Wis. 2d at 100 (quoting the Manual). In *Major*, the County represented in its sales contract that it had " 'no notice or knowledge of. . .the presence of any dangerous or toxic materials or conditions affecting the property.' " *Major*, 196 Wis. 2d at 945 (quoting the sales contract). The court determined that the County had a ministerial duty to not make this representation unless true. "Simply put, Milwaukee County should not have made the representation without checking its files." *Id.* In the present case, the statute unambiguously provides that an applicant may file an application for a disability annuity before his or her sick leave has been exhausted, Wis. Stat. § 40.63(8)(f), and failure to do so before the applicant's death deems the application invalid, § 40.63(8)(h). The benefits specialist represented to the Kierstyns that

. Mrs. Kierstyn could not apply for a disability annuity until after her sick leave was exhausted. Simply put, Farrell should not have made the representation without checking the unambiguous statute.

¶ 52. Once Farrell, in his discretion, took on the task of providing the Kierstyns with information about when to apply for WRS disability benefits, information provided in an unambiguous statute, I conclude that Farrell had a ministerial duty to provide the correct information. Accordingly, I dissent, and would reverse the court of appeals' decision and remand the case to the circuit court for proceedings on the merits.

¶ 53. I am authorized to state that Justice N. Patrick Crooks joins this dissent.