Harold UMANSKY, Individually and
as Personal Representative of the Estate of
Richard Umansky and Thelma Umansky,
Plaintiffs-Appellants-Cross-Respondents,

v.

ABC INSURANCE COMPANY, Defendant,

Barry FOX,
Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 2007AP385. Oral argument March 26, 2008.
—Decided June 26, 2008.*

2008 WI App 101

(Also reported in 756 N.W.2d 601.)

† Petition to review granted.

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *J. Michael Riley* and *Jason J. Knutson* of *Axley Brynelson, LLP*, Madison. There was oral argument by *John M. Riley*.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *John J. Glinski*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *John J. Glinski*.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. This is a wrongful death action in which the plaintiffs claim that Barry Fox, Director of Facilities for Camp Randall Stadium, negligently caused the death of Richard Umansky, who fell from a platform in the stadium while working as a cameraman for ABC Inc. The plaintiffs appeal the order of the circuit court granting summary judgment in favor of Fox after the court concluded he is immune from liability under the common law doctrine of immunity for state employees. The plaintiffs contend Fox is not immune because (1) he had a ministerial duty under 29 C.F.R. § 1910.23(c)(1), incorporated by WIS. ADMIN. CODE §§ Comm 32.15 (Mar. 1999) and 32.50 (July 2002),[1] to have a rail on the platform from which Umansky fell; (2) the known danger exception to im-

---

[1] All references to WIS. ADMIN. CODE §§ Comm 32.15 and 32.50 are to the versions effective March 1, 1999 and July 1, 2002, respectively.

451

munity applies; and (3) broad immunity for discretionary acts is inconsistent with earlier Wisconsin case law.

¶ 2. With respect to the ministerial duty exception, we do not conclusively determine whether it applies. However, we make a number of rulings related to the exception. First, the nondelegability to third parties of an employer's duty under the safe place statute does not prevent suit against a state employee for failure to comply with a safety regulation adopted pursuant to Wis. Stat. § 101.055(3) (2001–02).[2] Second, the "law" that is the source of a ministerial duty need not specify the employee position responsible for carrying out the duty; it is sufficient if the "law" imposes a duty that is ministerial and other evidence establishes that a particular employee is responsible for carrying out that duty. Third, a regulation that otherwise imposes a ministerial duty is not discretionary simply because the supervisory employee responsible for compliance with the regulation has discretion with respect to assigning tasks to carry out that duty. Fourth, 29 C.F.R. § 1910.23(c)(1), incorporated by Wis. Admin. Code §§ Comm 32.15 and 32.50, imposes a ministerial duty to have a railing meeting the specifications of the regulation on a platform that meets the requirements of the regulation.

¶ 3. Based on the above rulings and the undisputed facts, we conclude Fox was responsible for compliance with state and federal safety regulations and this job responsibility is sufficient to impose on him the duty to comply with 29 C.F.R. § 1910.23(c)(1) insofar as the regulation applies to his employer. We further

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. However, we note that the 2001–02 version of all the statutes we cite are identical to the 2005–06 version, insofar as they affect this appeal.

452

conclude that, given the height and structure of the platform from which Umansky fell, Fox had a ministerial duty to have a standard railing or an alternative as specified in 29 C.F.R. § 1910.23(c)(1) on the open side or sides of the platform, if Fox's employer was required by state law to comply with this regulation as to this platform.[3]

¶ 4. We also conclude the known danger exception does not apply and that we are bound by the case law on public employee immunity that the plaintiffs challenge.

¶ 5. Accordingly, we reverse the summary judgment granted in Fox's favor and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 6. For purposes of this appeal, the facts in this paragraph are not disputed. Umansky was employed as a cameraman by ABC Inc. On November 21, 2003, he was found lying unconscious beneath a platform from which he had been working at the University of Wisconsin's Camp Randall Stadium. He later died as a result of injuries sustained from falling from the platform to the concrete walkway below.

¶ 7. Umansky's parents and the Estate of Richard Umansky filed this action against Fox, claiming that Umansky's fall was caused by Fox's negligence.[4] The amended complaint alleged that Fox was responsible for the safety of Camp Randall Stadium, including compli-

---

[3] In using the word "structure of the platform" in this sentence, we mean to include the upper platform, from which Umansky fell, as well as the platform eighteen inches below that. We discuss this structure more fully at paragraphs 60–62.

[4] ABC Insurance Company, a fictitious name for the worker's compensation insurer of ABC Inc., is also a defendant.

ance with state and federal safety regulations, and that he was negligent in failing to ensure that the platform was reasonably safe and in failing to comply with the applicable regulations, including failing to provide railings on the platform in violation of 29 C.F.R. § 1910.23(c)(1).

¶ 8. Fox moved to dismiss on the ground that the amended complaint did not state a claim for relief because the negligent acts alleged were discretionary, not ministerial, and Fox was therefore entitled to immunity as a public employee. In addition, Fox argued, the amended complaint did not contain allegations that showed an exception to immunity based on a known danger. The circuit court denied the motion.

¶ 9. Fox moved for summary judgment based on discretionary act immunity for public employees.[5] He submitted his affidavit in which he averred that the platform from which Umansky fell had been in use by ABC Inc. and other broadcasting companies for several years prior to the accident, and no one had indicated to him that the platform was not safe or did not comply with applicable regulations. Umansky's submissions included Fox's deposition, the Occupational Safety and Health Administration (OSHA) accident investigation report, and a citation and notification of penalty to ABC Inc. for a violation of 29 C.F.R. § 1910.23(c)(1). The regulation provides: "Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on

---

[5] This doctrine is usually referred to as providing immunity for "public officers and employees." For ease of reference we use simply "public employees."

all open sides except where there is entrance to a ramp, stairway, or fixed ladder . . . ."

¶ 10. The circuit court concluded that OSHA regulations impose a duty upon employers, but not on employees, and therefore Fox did not have a ministerial duty to comply with 29 C.F.R. § 1910.23(c)(1).[6] The court also concluded that the known danger exception to immunity did not apply because a platform without a rail did not rise to the level of imminent danger sufficient to trigger this narrow exception, and because the danger the platform posed did not suggest one specific ministerial act to remedy it. The circuit court therefore granted summary judgment in favor of Fox.

## DISCUSSION

¶ 11. On appeal the plaintiffs contend that, based on the undisputed facts, OSHA and Wisconsin law imposed a ministerial duty on Fox to provide a railing on the platform and, alternatively, the known danger exception applies. They also contend that the broad immunity that has developed under the case law for discretionary acts is inconsistent with earlier case law.

¶ 12. Fox's position is that the circuit court should have granted his motion to dismiss the amended complaint for failure to state a claim and, in the alternative, that the court properly granted summary judgment in

[6] The court also concluded that the Wisconsin safe place statute, WIS. STAT. § 101.11(1) did not impose obligations on employees, but, even if it did, it did not impose a ministerial duty on Fox because it required only that he take "reasonable" measures to ensure safety. On appeal, the plaintiffs are not arguing there is a ministerial duty under the safe place statute that is separate from the administrative regulations promulgated pursuant to WIS. STAT. § 101.055(3). *See* paragraph 29.

his favor. Fox asserts that in Wisconsin only the employer, not any employee, has the obligation to comply with this OSHA regulation and the employer may not delegate this duty to an employee. Therefore, Fox argues, he cannot have a duty to comply with it. In the alternative, Fox contends that complying with the regulation involved several discretionary decisions. Fox also contends that neither the allegations in the amended complaint nor the summary judgment submissions show that the known danger exception is applicable. Finally, Fox responds that we are bound by the case law the plaintiffs challenge.

¶ 13. In the first section below, we set forth the applicable law. In the second section, we address the plaintiffs' contention that this law has broadened the immunity doctrine beyond that originally intended. We conclude we are bound to follow the challenged case law. In the third section, we discuss the ministerial duty exception. While we resolve many of the disputed legal issues in the plaintiffs' favor, we do not conclusively determine whether the ministerial duty exception applies. In the fourth section, we take up the known danger exception and conclude it does not apply.

I. Applicable Law

¶ 14. We review an order granting summary judgment de novo, and we apply the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We first analyze the complaint to determine whether it states a claim for relief. *Id.* When a complaint alleges a negligence claim against a public employee, it does not state a claim for relief unless it alleges circumstances that

warrant an exception to the general rule of immunity. *See C.L. v. Olson*, 143 Wis. 2d 701, 706–07, 725, 422 N.W.2d 614 (1988) (complaint alleging a parole agent was negligent did not allege an exception to the officer's civil immunity and was dismissed for failure to state a claim). In analyzing whether a complaint states a claim for relief, we construe it liberally, and we take as true all allegations and all reasonable inferences from the allegations that favor the plaintiff. *Green Spring Farms*, 136 Wis. 2d at 317.[7]

¶ 15. If the complaint does state a claim for relief, and if issue is joined, we determine whether there are any genuine issues of material fact. *Id.* at 320. If there are none, we decide whether the moving party is entitled to judgment as a matter of law. *Id.*

¶ 16. The defense of discretionary act immunity for public employees assumes negligence and focuses on whether the action or inaction upon which liability is premised is entitled to immunity. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323,

---

[7] Fox filed a cross-appeal contending that the circuit court erred in denying his motion to dismiss the amended complaint for failure to state a claim. It was not necessary to file a cross-appeal because this is an alternative ground on which to affirm the court's order dismissing the action on summary judgment. *See* Wis. Stat. § 809.10(2)(b). Therefore, we address the sufficiency of the amended complaint as part of the appeal and, because it is the first step in summary judgment analysis, we address it in that context.

We also observe that some of the arguments Fox makes in support of summary judgment do not depend upon submissions outside the amended complaint. We therefore address these in the context of discussing whether the amended complaint states a claim for relief.

646 N.W.2d 314. The general rule is that state employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties.[8] *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996). This doctrine is grounded in common law. *Id.* at 9. It is based largely on public policy considerations that spring from an interest in protecting the state's financial resources and a preference for political rather than judicial redress for actions of public officers. *Lodl*, 253 Wis. 2d 323, ¶ 23.[9]

---

[8] Unlike common law immunity for state employees, immunity for municipal employees, as well as municipal bodies, is governed by statute, WIS. STAT. § 893.80(4), which provides:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

For persons and entities covered by this statute, liability is the rule and immunity is the exception. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 22, 253 Wis. 2d 323, 646 N.W.2d 314. However, the concept of immunity and the tests for the exceptions are generally the same for both state and municipal employees. *See Scott v. Savers Prop. and Cas. Ins. Co.*, 2003 WI 60, ¶ 16 n.10, 262 Wis. 2d 127, 663 N.W.2d 715. In particular, the statutory phrase "legislative, quasi-legislative, judicial or quasi-judicial functions" has been interpreted to have the same meaning as the term "discretionary," which is used at common law in connection with immunity for state officers and employees. *C.L. v. Olson*, 143 Wis. 2d 701, 716 n.9, 422 N.W.2d 614 (1988).

[9] The policy considerations favoring public officer immunity have been identified as: (1) the danger of influencing public officers in the performance of their functions by the

¶ 17. While immunity is the rule, it is subject to exceptions that represent a judicial balance between the need of public officers to perform their functions freely and the right of an aggrieved party to seek redress. *Lister v. Board of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). There are two exceptions potentially applicable in this case: the ministerial duty exception and the known danger exception.

¶ 18. The ministerial duty exception applies when a duty is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes, and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Scott v. Savers Prop. and Cas. Ins. Co.*, 2003 WI 60, ¶ 27, 262 Wis. 2d 127, 663 N.W.2d 715 (citing *Lister*, 72 Wis. 2d at 301). Stated another way, a duty is ministerial when it has been "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *Id.* (citing *Lodl*, 253 Wis. 2d 323, ¶ 26). "Law" in this context means, at a minimum, an act of government,

threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office. *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

which includes statutes, administrative regulations, policies, orders, plans adopted by governmental units, and contracts entered into by governmental units. *Meyers v. Schultz*, 2004 WI App 234, ¶ 19, 277 Wis. 2d 845, 690 N.W.2d 873.

¶ 19. The supreme court has explained that "[t]he ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter." *Lodl*, 253 Wis. 2d 323, ¶ 25 (citing *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 91, 596 N.W.2d 417 (1999)).

██

¶ 20. The known danger exception applies when "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." *Lodl*, 253 Wis. 2d 323, ¶ 38 (citation omitted).

> In this context, the ministerial duty arises not by operation of law, regulation or government policy, but by virtue of particularly hazardous circumstances—circumstances that are both known to the [employee] and sufficiently dangerous to require an explicit, non-discretionary . . . response . . . .

> For the known danger exception to apply, the danger must be compelling enough that a self-evident, particularized, and non-discretionary . . . action is required. The focus is on the specific act the [employee] is alleged to have negligently performed or omitted.

*Id.*, ¶¶ 39–40.

## II. Challenge to Post-*Holytz* Case Law

¶ 21. The plaintiffs' position is that the case law on public employee immunity that has developed since *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 115 N.W.2d 618 (1962), is inconsistent with that opinion. In *Holytz*, the supreme court abrogated the rule of governmental immunity for torts and declared that "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." *Id.* at 39.[10] The supreme court has recently declined to undertake a reexamination of post-*Holytz* case law. *Scott*, 262 Wis. 2d 127, ¶¶ 33–38; *id.*, ¶¶ 62–63 (Bablitch, J., concurring); *id.*, ¶¶ 75–82 (Prosser, J., dissenting).

¶ 22. This court is bound by prior supreme court decisions, *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159 (1984), and we may not overrule, modify, or withdraw language from the prior opinions of this court. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). Accordingly, we apply the binding precedent without further discussing the plaintiffs' challenge to it.[11]

---

[10] The court in *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962), made clear that its abrogation of the rule did not impose liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions. The court also clarified that the abrogation applied to all public bodies, including the State, with the result that the State was liable in respondeat superior for damages for the torts of its officers and employees in the course of their duties. *Id.* at 40. However, the court explained, the State's sovereign immunity from suit remained intact. *Id.* at 40–41.

[11] We observe that the supreme court recently granted a petition for review in *Manning v. Necedah Area School District*,

III. Ministerial Duty Exception

A. Does the Amended Complaint State a Claim for Relief?

¶ 23. Fox contends the amended complaint does not state a claim for relief because it does not allege facts that, if true, show that he had a ministerial rather than a discretionary duty to make Camp Randall safe and to comply with state and federal safety regulations.

¶ 24. The pertinent allegations in the amended complaint are the following. Fox is an employee of the University of Wisconsin. "At all times pertinent to this action he was responsible for the condition of the Camp Randall Stadium where Richard Umansky was killed and was specifically responsible for the safety of the facility, including compliance with the state and federal regulations."

> On information and belief, the incident was caused by the negligence of Barry Fox . . . in failing to ensure the platform from which Richard Umansky fell was reasonably safe, failing to comply with OSHA regulations, failing to comply with Wisconsin safety regulations for similar structures, failing to establish appropriate guidelines and practices to ensure compliance with

No. 05–3093, unpublished slip op. (Wis. Ct. App. Sept. 27, 2007), *petition for review granted,* 2008 WI 6, 306 Wis. 2d 45, 744 N.W.2d 295, on this issue: "Is it time to discard the broad discretionary act immunity analysis in claims against municipalities in favor of a governmental, legislative or judicial discretion analysis?" Wisconsin Supreme Court Table of Pending Cases, Updated: June 13, 2008, *http://wicourts.gov/sc/sccase/ Display Document.html?content=htmlseqNo=33073.* However, the petition for review was dismissed on February 4, 2008, based on a voluntary dismissal. 2008 WI 19, 307 Wis. 2d 296, 746 N.W.2d 814.

OSHA and state safety regulations, failing to provide and maintain a safe environment within Camp Randall Stadium, failing to provide railings on the platform from which Richard Umansky fell in violation of 29 C.F.R. § 1910.23(c)(1) . . . .

¶ 25. We agree with Fox that most of the allegations of his failures do not create reasonable inferences that he had a ministerial duty to do those things. Keeping the platform "reasonably safe," complying with unspecified regulations, providing and maintaining a safe environment, and establishing appropriate guidelines all involve the type of discretion that falls within immunity. *See Kimps*, 200 Wis. 2d at 10–11, 14–15 (neither a teacher's duty to provide safe equipment nor a safety officer's duty to investigate accidents and take corrective action is a ministerial duty; the former duty is not absolute, certain, and imperative, the latter does not prescribe the time, mode, and occasion for performance, and both involve the exercise of judgment and discretion). However, the allegation of a failure to provide railings in violation of 29 C.F.R. § 1910.23(c)(1) does allege a specific act Fox failed to perform, and this, the plaintiffs assert, is the source of his ministerial duty.

¶ 26. 29 C.F.R. § 1910.23(c)(1) provides:[12]

(c) *Protection of open-sided floors, platforms, and runways.* (1) Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing [defined in paragraph (e)(1)] (or the equivalent as specified in paragraph (e)(3) of this section)[13] on all open sides except where

---

[12] The current version of 29 C.F.R. § 1910.23 was in effect at all times relevant to this appeal, having been promulgated by 49 Fed. Reg. 5,321 (Feb. 10, 1984).

[13] 29 C.F.R. § 1910.23(e)(1) and (3) provide:

there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides,

(e) *Railing, toe boards, and cover specifications.* (1) A standard railing shall consist of top rail, intermediate rail, and posts, and shall have a vertical height of 42 inches nominal from upper surface of top rail to floor, platform, runway, or ramp level. The top rail shall be smooth-surfaced throughout the length of the railing. The intermediate rail shall be approximately halfway between the top rail and the floor, platform, runway, or ramp. The ends of the rails shall not overhang the terminal posts except where such overhang does not constitute a projection hazard.

(3) [Reserved]

(i) For wood railings, the posts shall be of at least 2–inch by 4–inch stock spaced not to exceed 6 feet; the top and intermediate rails shall be of at least 2–inch by 4–inch stock. If top rail is made of two right-angle pieces of 1–inch by 4–inch stock, posts may be spaced on 8–foot centers, with 2–inch by 4–inch intermediate rail.

(ii) For pipe railings, posts and top and intermediate railings shall be at least 1 1/2 inches nominal diameter with posts spaced not more than 8 feet on centers.

(iii) For structural steel railings, posts and top and intermediate rails shall be of 2–inch by 2–inch by 3/8 -inch angles or other metal shapes of equivalent bending strength with posts spaced not more than 8 feet on centers.

(iv) The anchoring of posts and framing of members for railings of all types shall be of such construction that the completed structure shall be capable of withstanding a load of at least 200 pounds applied in any direction at any point on the top rail.

(v) Other types, sizes, and arrangements of railing construction are acceptable provided they meet the following conditions:

(a) A smooth-surfaced top rail at a height above floor, platform, runway, or ramp level of 42 inches nominal;

(b) A strength to withstand at least the minimum requirement of 200 pounds top rail pressure;

(c) Protection between top rail and floor, platform, runway, ramp, or stair treads, equivalent at least to that afforded by a standard intermediate rail[.]

464

(i) Persons can pass,

(ii) There is moving machinery, or

(iii) There is equipment with which falling materials could create a hazard.

(Footnote added.)

¶ 27. OSHA regulations in general, and this one in particular, do not apply directly to the University of Wisconsin because a state and its subdivisions are excluded from the definition of "employer." Williams-Steiger Occupational Safety and Health Act of 1970, Pub. L. No. 91–596, § 3(5), 84 Stat. 1590, 1591 (1970); 29 C.F.R. § 1910.2(c). However, WIS. ADMIN. CODE § Comm 32.15 provides, with certain exceptions not applicable here, that "all places of employment and public buildings of a public employer shall comply with the federal [OSHA] requirements adopted under s. Comm 32.50." WISCONSIN ADMIN. CODE § Comm 32.50(2) adopts 29 C.F.R. pt. 1910, thus making § 1910.23 applicable to places of public employment and to public buildings.

¶ 28. Fox contends that, based on the allegations in the amended complaint, he does not have a ministerial duty to comply with 29 C.F.R. § 1910.23(c)(1) for a number of reasons. We disagree with each of his contentions.

¶ 29. First, Fox asserts that the duties imposed by WIS. ADMIN. CODE §§ Comm 32.15 and 32.50 are imposed on the *employer.* Fox points out that WIS. ADMIN. CODE § Comm 32.50 was promulgated pursuant to WIS. STAT. § 101.055(3)(a), which must be read in conjunction with the safe place statute, WIS. STAT. § 101.11. That statute imposes an obligation on an *"employer* [to] furnish . . . a

place of employment which shall be safe for employees . . . and for frequenters . . . ." Section 101.11(1) (emphasis added).[14] Fox relies on case law decided under the safe place statute that provides that an employer may not delegate its duty to provide a safe place of employment. According to Fox this means that the employer may not delegate this duty to its employees.

¶ 30. *Dykstra v. Arthur G. McKee & Co.*, 100 Wis. 2d 120, 131, 301 N.W.2d 201 (1981), on which Fox relies, explained the principle that an employer's duty under the safe place statute is nondelegable. That means, the court stated, that "the person who has that duty cannot assert that another to whom he has alleg-

---

[14] WISCONSIN STAT. § 101.11(1) provides:

(1) Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

WISCONSIN STAT. § 101.01(4) defines an employer as:

(4) "Employer" means any person, firm, corporation, state, county, town, city, village, school district, sewer district, drainage district, family care district and other public or quasi-public corporations as well as any agent, manager, representative or other person having control or custody of any employment, place of employment or of any employee.

WISCONSIN STAT. § 101.055(3)(a) directs the department of commerce to adopt administrative rules to protect the safety and health of public employees equal to the protection of OSHA for private employees.

edly delegated the duty is to be substituted as the primary defendant in his stead for a violation of safe place provisions." *Id.* at 132. Thus, for example, the employer may not claim that it has no liability because it had contracted with another to make the building safe. *See Bunce v. Grand & Sixth Bldg., Inc.*, 206 Wis. 100, 103, 238 N.W. 867 (1931).[15]

¶ 31. We see no logical connection between an employer's inability to shift its liability for a safe place violation to a third party and its ability to delegate to an employee the duty to comply with applicable safety regulations. When an employer delegates a statutory or regulatory duty to an employee, it does not thereby shift liability. Rather, the employer is responsible if the employee fails to carry out that duty. *Dykstra*, 100 Wis. 2d at 131. Of course, when the State is the employer, as in this case, the State is immune from suit for a monetary judgment under the doctrine of sovereign immunity. *Lister*, 72 Wis. 2d at 292–97. However, the injured party may sue an individual state employee for damages, subject to the defense of public employee immunity. *See id.* at 298–99; *Chart v. Dvorak*, 57 Wis. 2d 92, 102–03, 203 N.W.2d 673 (1973).[16] We con-

[15] *Dykstra v. Arthur G. McKee & Co.*, 100 Wis. 2d 120, 121–22, 301 N.W.2d 201 (1981), addressed the issue whether an indemnification agreement between a general contractor and a subcontractor was an impermissible delegation of the general contractor's duties under the safe place statute. The court concluded it was not, reasoning that the general contractor, as the person in control of the place of employment, remained liable to the injured party; the agreement did not shift responsibility for the statutory violation but was simply a method of financial recoupment for the general contractor. *Id.* at 132.

[16] Under WIS. STAT. § 895.46(1)(a), in an action against a state employee in his or her official capacity or for acts within

clude the principle of nondelegability discussed in *Dyk-stra* does not apply to prevent an injured party from suing a state employee.

¶ 32. Second, Fox contends that, because WIS. ADMIN. CODE §§ Comm 32.15 and 32.50 apply to public *employers,* none of those regulations can be the source of a ministerial duty of an *employee,* even if the employer assigns the employee the responsibility to comply with those regulations. We understand Fox's position to be that the requirement that a ministerial duty be "imposed by law" means the "law" must specify the employee position that has the responsibility to carry out the prescribed duty.

¶ 33. The parties have not provided, and we have not been able to locate, any case that explicitly addresses this issue. However, in at least one case, *Chart,* 57 Wis. 2d 92, the court held there was a ministerial duty where the "law" did not contain such a specification. In *Chart,* the defendants were two Wisconsin Highway Commission employees and the alleged negligent act was the placing of a highway warning sign. *Id.* at 94. The commission, under its statutory authority to regulate traffic signs, had adopted a manual that specified that warning signs in rural areas should "normally be placed about 750 feet in advance of the hazard or condition warned of." *Id.* at 100. The court concluded that the employees were not immune from suit because, once they made the discretionary decision to place the sign, they had a ministerial duty to place it according to

the scope of employment, the State pays any damages and costs awarded against the employee that are not covered by applicable insurance.

the specifications in the manual. *Id.* at 100–02.[17] The statutes at issue imposed on the commission the obligation to erect and maintain standard warning signs, and the quoted portion from the manual did not specify which employee was responsible for insuring that the manual was complied with. *Id.* at 99 n.5, 100. The court considered the job description of the defendants in determining that they were responsible for the proper sign placement. *Id.* at 97–98, 104–05. Thus, *Chart* lends supports to Umansky's position that the "law" that is the source of the ministerial duty need not specify the employee responsible for carrying out the duty.[18]

---

[17] Although the initial opinion in *Chart v. Dvorak*, 57 Wis. 2d 92, 105, 203 N.W.2d 673 (1973), did not use the term "ministerial duty," the court's per curiam opinion on motion for rehearing makes clear that the duty to place the warning sign as specified in the manual, once the decision was made to erect a sign, was "ministerial," and that is why the employees could be held liable if it was proved at trial that they had not done so. Subsequent supreme court decisions have treated *Chart* as a ministerial duty case. *See, e.g., Allstate Ins. Co. v. Metropolitan Sewerage Comm'n*, 80 Wis. 2d 10, 16, 258 N.W.2d 148 (1977); *Bicknese v. Sutula*, 2003 WI 31, ¶ 26, 260 Wis. 2d 713, 660 N.W.2d 289.

[18] Fox asserted at oral argument that *Chart*, 57 Wis. 2d 92, does not support the plaintiffs' position but instead supports his position that an employer may not delegate its duty to comply with the regulations promulgated in Wis. Admin. Code §§ Comm 32.15 and 32.50. Fox apparently equates the employer's nondelegable duty under the safe place statute with the supervisory employee's nondelegable responsibility in *Chart* for correct placement of highway signs. However, these are two distinct concepts. As we have already explained, the nondelegable nature of the employer's duty under the safe place statute means that the employer cannot shift liability for violations to a third party; it does not prevent a public employer from assigning to an employee the task of complying with the

¶ 34. We next consider the rationale underlying the distinction between ministerial and discretionary duties to determine whether they provide guidance on this issue. An early explanation of the distinction was provided in *Druecker v. Solomon*, 21 Wis. 628, [*621], 636–37, [*629–30] (1867):

> [W]here the heads of departments are the political or confidential agents of the executive merely to execute his will, or rather to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy."

(quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 166 (1803)).

¶ 35. Recently we commented on this statement from *Druecker*: "The principle we discern from *Druecker* for permitting liability for injuries when a ministerial duty is involved is that individuals have a

regulations promulgated under Wis. Admin. Code §§ Comm 32.15 and 32.50. *See* ¶¶ 29–30, *supra*. The "nondelegable" nature of the employees' responsibilities in *Chart* arose out of their job descriptions, which included supervisory responsibility for placement of highway signs, and meant they could not delegate their overall authority or accountability for the results. 57 Wis. 2d at 96–98. For that reason, the *Chart* court rejected their contention that they were not proper defendants because they did not actually place the highway sign at issue. *Id.* at 104–05. Far from supporting Fox's position, *Chart* demonstrates that a supervisor may have a ministerial duty to comply with a regulation even though subordinate employees are the ones who actually perform the specific concrete tasks mandated by the manual or regulation.

470

right to expect public officers and employees to perform the duties that have been specifically mandated by the government." *Meyers*, 277 Wis. 2d 845, ¶ 17. This principle supports the plaintiffs' position, not Fox's. It is the mandatory and specific nature of the duty the government has chosen to impose that triggers the expectation that the duty will be carried out and the concomitant imposition of liability if it is not. We see no basis for injecting a requirement that the government also specify the particular employee position that is responsible for carrying it out.

¶ 36. Every public employer "is ·immobile[ized] absent employees or agents to carry on is functions." *See Chart*, 57 Wis. 2d at 103 (discussing the State as an employer). Thus, when the "law" imposes a duty on a public employer, the unambiguous intent is that public employees will carry out the duty.

¶ 37. In a particular case there may be a factual question of which employee had the duty, but that is separate from the legal issue of whether the "law" imposes a ministerial duty. The factual question may be answered by reference to a job description, *see id.* at 97–98, 104–05, by the employee's testimony, *see Bicknese v. Sutula*, 2003 WI 31, ¶ 27, 260 Wis. 2d 713, 660 N.W.2d 289, or in other ways. The point, for purposes of the present discussion, is that the absence of a designation in WIS. ADMIN. CODE §§ Comm 32.15 and 32.50 of which public employees are responsible does not make a particular regulation any less imperative or specific.

¶ 38. We also observe that Fox's position is inconsistent with case law involving municipal bodies and employees, and would require a distinction between state employees and municipal employees that appears

unwarranted. Unlike the State, municipal bodies are not protected by sovereign immunity; they do, however, have the same immunity that municipal employees have for discretionary acts, and the same liability for ministerial acts. *See* Wis. Stat. § 893.80(4) and footnote 8, *supra.* Thus, the defendants in actions involving negligence by municipal employees are typically the municipal bodies, and the issue of ministerial duty focuses on whether the municipal body had a ministerial duty, not on whether a particular employee did. Examples are: *DeFever v. City of Waukesha*, 2007 WI App 266, ¶¶ 11, 13, 306 Wis. 2d 766, 743 N.W.2d 848 (regulation requiring a water main to be placed with a minimum cover of five to seven feet imposed a ministerial duty on the city),[19] and *Major v. County of Milwaukee*, 196 Wis. 2d 939, 944–45, 539 N.W.2d 472 (Ct. App. 1995) (while "Milwaukee County and its officers had discretion whether to sell property it owned, and to determine terms of sale that were agreeable to it[,] . . . [o]nce those terms of sale were set and reified in [a] contract, . . . the County was under a ministerial duty to comply").

¶ 39. In neither *DeFever* nor *Major* did the regulation or contract specify that any particular municipal employee was responsible for compliance; yet in each we concluded there was a ministerial duty because of the specific nature of the requirements imposed. One might argue that these cases are inapplicable because

[19] In *DeFever v. City of Waukesha*, 2007 WI App 266, ¶ 17, 306 Wis. 2d 766, 743 N.W.2d 848, there was no dispute that the main had been originally placed in compliance with the regulation; the dispute turned on whether the modification to the construction site, which resulted in a lesser cover than that required in the regulation, involved discretionary acts, and we concluded it did.

the ministerial duty is imposed on the municipal body, which, unlike the State, does not have sovereign immunity. If so, the question arises why the "law" imposing a ministerial duty for state employees must specify the particular employees responsible but need not do so for municipal employees.

¶ 40. To put the question more pointedly: Why should state employees have immunity for failing to comply with a regulation incorporated by WIS. ADMIN. CODE § Comm 32.50 solely because WIS. STAT. § 101.11(1) refers to "employers," when municipal bodies and municipal employees would not be immune, assuming that the regulation in question meets the case law requirements for a ministerial duty? We see no distinction from the standpoint of the statutory and regulatory demands made on the State and the municipality as employers and on the responsible employees of each. Nor do we see a justification based on the persons injured as the result of an employee's failure to comply. The sovereign immunity enjoyed by the State and its agencies does not provide a justification. The doctrine of sovereign immunity is distinct from public employee immunity, *Lister*, 72 Wis. 2d at 298–99. In *Chart*, the court specifically rejected the proposition that state employees should partake of the sovereign immunity enjoyed by the highway commission, reasoning that it was inconsistent with the concept that individual state employees may be liable for their negligence when they fail to comply with a ministerial duty. *Chart*, 57 Wis. 2d at 102–03.

¶ 41. We recognize that for state employees immunity is the rule, while for municipal employees it is the exception. *Lodl,* 253 Wis. 2d 323, ¶ 22. However, Fox does not explain why this distinction supports his position. We conclude this distinction does not offer a

rationale for holding that no regulation incorporated by WIS. ADMIN. CODE § Comm 32.50 imposes a ministerial duty on a state employee solely because WIS. STAT. § 101.11(1) imposes the duty to provide a safe place on the employer.

¶ 42. We conclude that the "law" that is asserted to be the source of a ministerial duty need not specify the employee position that is responsible for the duty specified in the "law." Accordingly, the fact that the relevant statute and regulations impose the duty for a safe place on the employer, not on the employee position that Fox holds, is not a basis for concluding he did not have a ministerial duty to comply with 29 C.F.R. § 1910.23(c)(1).

¶ 43. Third, Fox contends that the description of his duty in the amended complaint—"responsible for the condition of the Camp Randall Stadium where Richard Umansky was killed, and . . . specifically responsible for the safety of the facility, including compliance with the state and federal regulations"—is too general a job description to constitute a ministerial duty. Fox relies on our opinion in *Kimps v. Hill*, 187 Wis. 2d 508, 524, 523 N.W.2d 281 (Ct. App. 1994), *aff'd*, 200 Wis. 2d 1, 546 N.W.2d 151 (1996). In *Kimps*, we concluded that a job description for the university's safety officer, which included investigating accidents, taking corrective action, and conducting inspections to assure facilities and equipment were in working order, did not impose a ministerial duty. *Id.* at 523. We explained that a general job description such as that did not create a ministerial duty to prevent all accidents; if it did, we stated, "the 'ministerial duty' exception would swallow the rule of immunity." *Id.* at 524. The supreme court agreed with this conclusion. *Kimps*, 200 Wis. 2d at 14–15.

¶ 44. The facts alleged in the amended complaint here are significantly different than those in *Kimps*. Fox's alleged responsibility includes complying with regulations, one of which is 29 C.F.R. § 1910.23(c)(1). In *Kimps*, there was no specific regulation or other "law" that the safety officer was responsible for complying with. *Kimps* stands for the unremarkable proposition that a general job description does not, in itself, create a ministerial duty. *Kimps* does not support Fox's argument that the responsibility to comply with specific safety regulations may not create a ministerial duty.

¶ 45. Fourth, Fox contends that his responsibility to comply with state and federal safety regulations involves the exercise of his discretion in deciding what regulations apply and how to apply them to specific facts. He relies on *Kierstyn*, 228 Wis. 2d 81. In *Kierstyn*, the court concluded that a benefit specialist who gave inaccurate benefit information based on an incorrect reading of a statute did not have a ministerial duty to give correct information even if the statute was clear. *Id.* at 94–95. The court explained that the benefit statute at issue did not direct the benefit specialist to act in any particular manner; the benefit specialist was under no duty to provide the information in the first instance; and once he elected to do so, he was under no duty to do so in a particular manner or according to particular rules. *Id.*

¶ 46. *Kierstyn* does not establish a blanket rule that the responsibility to comply with a statute or regulation always involves the exercise of discretion: such a proposition would eliminate ministerial duties altogether. Rather, the holding in *Kierstyn* was based on the lack of any statute or regulation that imposed a duty to act in a particular way. In contrast, the

475

regulation at issue here—29 C.F.R. § 1910.23(c)(1)—specifies that a platform meeting a particular description must be guarded by a railing meeting particular requirements. Fox does not point to any provision in the regulation that, based on the allegations in the amended complaint, required him to exercise his discretion in applying the regulation.

¶ 47. Fifth, Fox may be suggesting that the regulation does not impose a ministerial duty because it does not require a "time" for performance. *See Scott*, 262 Wis. 2d 127, ¶ 27 (citing *Lodl*, 253 Wis. 2d 323, ¶ 26) (a duty is ministerial when it has been "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion"). If so, we reject this argument. The only reasonable reading of the regulation is that a platform of the specified type must be guarded by a railing as specified in the regulation *at all times*.

¶ 48. Having rejected each of Fox's reasons for contending that the amended complaint does not allege facts that show he has a ministerial duty, we conclude the amended complaint does so. A reasonable inference from the allegations that Umansky fell nine feet from the platform to the walkway and that Fox failed to provide railings in violation of 29 C.F.R. § 1910.23(c)(1) is that the platform was "four or more feet above adjacent floor or ground level and was open-sided." The regulation on its face therefore mandates a railing "on all open sides except where there is entrance to a ramp, stairway, or fixed ladder." The regulation does not allow for the option of no railing in these circumstances and the regulation is very specific as to what type of railing

is required.[20] The duty to have a railing meeting the regulation's requirements is imposed by law, it is absolute, certain and imperative, and it requires performance in a specified manner and upon specified conditions that are not dependent upon the exercise of judgment or discretion. *Scott*, 262 Wis. 2d 127, ¶ 27. Finally, the allegations that Fox was "specifically responsible for the safety of the facility, including compliance with the state and federal regulations," are sufficient to allege that Fox had a ministerial duty to comply with 29 C.F.R. § 1910.23(c)(1). *Chart* establishes that a supervisory employee may have a ministerial duty to comply with a regulation even though subordinate employees are the ones that actually perform the specific concrete tasks mandated by the regulation. 57 Wis. 2d at 96–98, 104–05.

B. Is Fox Entitled to Summary Judgment?

¶ 49. The submissions on summary judgment show that the platform from which Umansky fell was

---

[20] In response to questioning at oral argument, Fox's counsel stated that he was not making the argument that the option of choosing among certain specified types of railings made the decision whether to have a railing a discretionary one. However, he suggested that *Lodl*, 253 Wis. 2d 323, might support that argument. We do not agree. *Lodl* addressed the known danger exception and concluded that, because the police officer in that case "clearly retained discretionary authority over the nature and mode of his response to the known dangerous situation, the circumstances did not give rise to a duty that can be characterized as ministerial[.]" *Id.*, ¶ 47. *Lodl* does not support the proposition that, simply because the regulation here permits a choice between a specified standard railing and specified alternatives, it does not impose a ministerial duty to choose one of those.

eight feet[21] above the walkway and at least one side of the platform was open. Neither party argues otherwise and we therefore treat these as undisputed facts.

¶ 50. With respect to Fox's job responsibilities, he testified at his deposition that he was responsible for the management of the physical property and grounds of the Athletic Department, which included responsibility for the safety of the Camp Randall building and facility. While "University Facilities Planning and Management people . . . have ultimate oversight of the safety," he testified, the "day-to-day single responsibility does lie with me." He also stated that "ultimately it would have been my decision" whether the platform met the OSHA requirements. When asked whether, other than himself, "there [was] someone else within [the] organization specifically [who was] tasked with checking to see if things comply with OSHA or state safety standards," he answered, "not within UW Athletic Facilities, no." He explained that the Safety Department within Facilities Planning and Management also has the responsibility to "independently come through any facility in the UW Athletic Department or any other department on the UW property and do independent checking, testing, to make sure we're code compliant, and I know they do that."

¶ 51. The plaintiffs' position is that this testimony establishes that Fox had the responsibility to comply with 29 C.F.R. § 1910.23(c)(1), while Fox contends that, as a supervisory employee, he had the discretion to

---

[21] Although the amended complaint alleges that Umansky fell nine feet and that is the distance we used in analyzing the allegations of the amended complaint, *see* paragraph 48, *supra,* the OSHA investigation report states he fell eight feet. This is therefore the distance we use at this point in our analysis. The discrepancy between eight and nine feet is not significant for the purposes of this opinion.

478

decide how to satisfy his responsibilities and he chose to rely on the UW Safety Department to do so. Fox highlights his testimony that no one "from the Safety Department ever raise[d] any concerns or . . . any questions about the configuration of this platform as far as [he was] aware."

¶ 52. We do not agree with Fox that he did not have a ministerial duty arising from 29 C.F.R. § 1910.23(c)(1) solely because the UW Safety Department had an independent responsibility to check for code compliance throughout the University. There may be more than one employee whose job description includes responsibility for compliance with particular types of regulations that give rise to a ministerial duty. In *Chart*, for example, the court concluded that *both* the district chief maintenance engineer and the district traffic supervisor had the responsibility for compliance with the manual and thus had a ministerial duty with respect to sign placement. 57 Wis. 2d at 97–98, 105. Fox's own testimony establishes that he had "the day-to-day single responsibility" for the safety of the Camp Randall facility and that "ultimately" it was his decision whether the platform met the OSHA requirements. Fox's supervisory role no doubt gave him the authority to delegate tasks, but he remained responsible for compliance with 29 C.F.R. § 1910.23(c)(1). *See Chart*, 57 Wis. 2d at 104–05. Although the manner in which he delegated tasks to comply with this regulation no doubt involved the exercise of his judgment and discretion, he had no discretion not to comply with the specific requirements of the regulation.

¶ 53. Fox also argues that the summary judgment submissions show that, despite the language of the regulation, a railing was not necessary if the person using the platform was "tethered." He points to his

deposition testimony that, after the accident, a "speed railing" was installed, which "meets the existing code," and "[i]f the . . . technician is tethered, with a four-point harness, the rail can be down. If the person is not tethered to the vomitory[22] the rail must be up." (Footnote added.) There is nothing in his deposition or other summary judgment submissions that explains this testimony. Fox referred to this testimony in the circuit court for the first time in his reply brief without explaining the source of this "tethering" alternative.

¶ 54. On appeal, Fox asks that we take judicial notice of an order issued by the Occupational Safety and Health Review Commission adopting a settlement agreement between the Secretary of Labor and ABC Inc. The settlement agreement affirms the citation, as amended, against ABC Inc. relating to Umansky's fall. The citation is for a violation of 29 C.F.R. § 1910.23(c)(1) and the amended penalty in the settlement agreement is $4,200.[23] One of the representations ABC Inc. makes in the agreement is that

> If determined to be feasible, standard railings will be installed by the abatement date, as amended herein [on all open sides of the camera platforms located above the seating section ramps at Camp Randall stadium]. If standard railings are not feasible or obstruct operational use of cameras for broadcast from these platforms, the use of personal fall protection will be required for all cameraperson [sic] working on these platforms.

Fox's position is that this settlement agreement and

[22] A vomitory is "[a] passageway in [an] amphitheater that leads from the outside wall to the foot of the banked seats." WEBSTER'S NEW COLLEGE DICTIONARY 1239 (1999).

[23] The original citation against ABC Inc. for a violation of 29 C.F.R. § 1910.23(c)(1) is part of the record in the circuit court and proposed a penalty of $7,000.

order demonstrate that there are alternatives to the railing specified in 29 C.F.R. § 1910.23(c)(1) and therefore there was no ministerial duty to have any railing.

¶ 55. We will assume without deciding that we have the authority to take judicial notice of the order and settlement agreement pursuant to Wis. Stat. § 902.03(2),[24] and further assume that it would be a proper exercise of our discretion to do so in the circumstances and procedural posture of this case. Making these assumptions, we conclude the settlement agreement and order do not support Fox's construction of the regulation.

¶ 56. The determination of what duty the law imposes requires a construction of the statute, regulation, or other "law" imposing the duty, and thus presents a question of law. *Larsen v. Wisconsin Power & Light Co.*, 120 Wis. 2d 508, 516, 355 N.W.2d 557 (Ct. App. 1984). The language of 29 C.F.R. § 1910.23(c)(1) plainly requires that if a platform is open-sided and four feet or more above adjacent floor or ground level, it must have a railing of one of the specified types. There is no ambiguity on this point.

¶ 57. While we may consider an agency's settled interpretation of its regulation and give it an appropriate degree of deference, we do so only when there is an ambiguity in the regulation. *See Orion Flight Servs. Inc. v. Basler Flight Servs. Inc.*, 2006 WI 51, ¶ 18, 290 Wis. 2d 421, 714 N.W.2d 130. Not only is there no

---

[24] Wisconsin Stat. § 902.03(2) provides:

(2) The courts of this state, including the court of appeals and the supreme court, may take judicial notice, if requested by a party and supplied with the necessary information, of all rules and orders of federal agencies.

ambiguity in the regulation here, but the settlement agreement and order do not even purport to interpret the regulation. Indeed, the affirmation of the citation as amended indicates that in OSHA's view ABC Inc. *did* violate the regulation because there was no railing.

¶ 58. A more fundamental flaw in Fox's argument is that it assumes, without presenting a developed argument to support the assumption, that OSHA rather than the Wisconsin Department of Commerce is the relevant agency for purposes of interpreting and enforcing the regulation the department has adopted for Wisconsin public employers. However, the department is the entity charged with enforcing these regulations. *See* WIS. STAT. § 101.055(6). Whatever authority OSHA may have to enter into a settlement agreement with a private employer that allows for an alternative safety measure to a plainly worded federal regulation, the approach under § 101.055 is to permit public employers to seek variances to the regulations the department has adopted under the procedures and conditions set forth in § 101.055(4). Perhaps there might have been grounds to obtain a variance under § 101.055(4)(d)[25] to allow the use of personal fall protection as an alternative to railings, but, without a variance, public employers in Wisconsin must

---

[25] WISCONSIN STAT. § 101.055(4)(d) provides:

(d) *Permanent variance.* The department may grant a permanent variance if the public employer complies with par. (a) and the department finds the employer has demonstrated by a preponderance of the evidence that the conditions and methods the employer uses or proposes to use provide employment or a place of employment which is as safe and healthful as that provided under the standard from which the employer seeks a permanent variance. A permanent variance may be modified or revoked upon application by the employer, an affected employee, a public employee representative or the department and after opportunity for a hearing, but not sooner than 6 months after issuance of the permanent variance.

comply with the standards adopted by the department.[26]

¶ 59. Finally, even if we were to assume for purposes of argument that the settlement agreement and order were somehow a binding interpretation of the regulation, under such an interpretation it is mandatory to have *either* the standard railings or personal fall protection (assuming the platform meets the specifications in the regulation). There is no discretion to have neither.

¶ 60. At oral argument Fox raised two additional reasons why the regulation is discretionary, which he did not raise in the circuit court or in his brief on appeal.[27] One concerns the height of the platform. Fox points to the citation against ABC Inc., which describes the platform as follows:

---

[26] The standards the department must adopt "shall provide protection *at least equal* to that provided to private sector employees under standards promulgated by the federal occupational safety and health administration . . . ." Wis. Stat. § 101.055(3)(a) (emphasis added). Thus, the department is not bound by an interpretation OSHA gives to a regulation the department has adopted, although the department may not adopt an interpretation that is less protective than OSHA's. For this reason, it is perfectly consistent with the statutory scheme to require that a public employer comply with the plain wording of a regulation unless it has obtained a variance under § 101.055(4), even if OSHA has decided to accept an alternative safety measure in a settlement agreement with a particular private employer.

[27] In our order for oral argument we asked the parties to be prepared to address several questions, including: "What does [Fox] contend are the precise areas of discretion under the regulation . . . ." [Feb. 1, 2008 order] We did not intend this question to be an invitation to make new arguments that had not been asserted in the circuit court and in the appellate brief he filed; we intended it as an opportunity for Fox to clarify the arguments already made.

The camera platform consisted of an upper and lower platform. The 4 feet wide x 8 feet long upper platform was 18 inches above the lower platform which was also 8 feet long and extended out 22 inches beyond the 4 foot width of the upper platform.

Fox asserts there was a question whether the top platform had to have a railing because it was eighteen inches, not four feet or more, from the lower platform, and that involved the exercise of his discretion.

¶ 61. Although our review of summary judgment is de novo, we may nonetheless apply waiver when a party presents an argument for the first time on appeal. *Gruber v. Village of North Fond du Lac*, 2003 WI App 217, ¶ 27, 267 Wis. 2d 368, 671 N.W.2d 692. Application of the waiver rule is appropriate where, had the argument been raised in the circuit court, it might have prompted rebuttal with factual information. *Id.* Plaintiffs' counsel did not indicate at oral argument any dispute with the above description of the platform. Because of that, and in the interest of resolving disputes over the construction and application of the regulation that may affect further proceedings, we will not apply the waiver rule and will address Fox's contention.

¶ 62. We conclude there is no question that the platform from which Umansky fell met the requirement of "4 feet or more above adjacent floor or ground level." *See* 29 C.F.R. § 1910.23(c)(1). The upper and lower platforms were the same length, the lower platform extended twenty-two inches beyond the width of the upper platform, and the lower platform was approximately six and one-half feet from the ground. It is not reasonable to consider the lower platform to be "adjacent floor or ground level." *See Id.* Given the relative size of the two platforms, a fall from the upper

platform is not an eighteen-inch fall to a surface on which the person will land, but an eight-foot fall to the concrete walkway. It is not reasonable to read the regulation to give discretion on whether to have a railing on the upper platform because of the existence of the lower platform.

¶ 63. As for Fox's second new argument, we do not resolve it on this appeal. Fox asserts that the regulation did not apply because there is no evidence this platform was ever used by a public employee as a workspace.[28] In his deposition, Fox testified that ABC Inc. and other stations used the platform for games, but Wisconsin Public TV used another platform that was configured the same way. Fox points out that the definition of "platform" in 29 C.F.R. § 1910.21(a)(4) is "A working space for persons, elevated above the surrounding floor or ground; such as a balcony or platform for the operation of machinery and equipment." As we understand Fox's position, because the purpose of WIS. ADMIN. CODE ch. Comm 32 is to establish "minimum occupational safety and health standards for public employes," WIS. ADMIN. CODE § Comm 32.001 (Mar. 1999), 29 C.F.R. § 1910.23(c)(1) does not apply to the platform from which Umansky fell unless it was the work space of a public employee. Apparently in Fox's view, ABC Inc. (and perhaps other commercial stations as well) was responsible for complying with the federal regulation regarding this particular platform and the University had no obligation to do so under WIS. ADMIN. CODE ch. Comm 32. Apparently, in Fox's view, this is true even

---

[28] Fox couched this argument as going to the discretionary nature of the regulation, but we have rephrased it. If Fox is correct on this point, the regulation does not impose *any* duty on his employer with respect to this platform, and Fox therefore has no duty, discretionary or ministerial.

though, it appears from his deposition, the platform is University property and was built and is maintained by the University.

¶ 64. This is a complex issue and Fox's legal theory is not well developed. In addition, the factual record is not fully developed, as it likely would have been had Fox raised this argument in the circuit court. That is, while the evidence at present indicates no state employees used this platform, we do not know what the evidence would show had there been further exploration of the use of the platform. We do not agree with Fox's assertion that, because immunity is the rule for state employees, Umansky's burden to establish the ministerial exception includes presenting evidence to refute arguments Fox did not make in the circuit court.[29] We conclude that application of the waiver rule is appropriate here and we do not address this issue further.[30]

¶ 65. Although we apply the waiver rule on this appeal, nothing in our opinion prevents the circuit court from permitting Fox to raise this argument on remand to the circuit court. So as not to suggest we are resolving this issue on this appeal, we phrase our rulings in the following paragraph with italicized caveats.

---

[29] We note that a reasonable reading of Fox's deposition is that he believed it was his job responsibility to see that this platform complied with OSHA regulations. While this does not resolve the legal issue that Fox now raises, it does indicate there was no basis for the plaintiffs to anticipate that Fox would take the position he now asserts.

[30] Fox's new argument does not alter our conclusion that the amended complaint states a claim for relief under the ministerial duty exception. A liberal construction of that complaint permits a reasonable inference that University employees used the platform.

¶ 66. Based on the undisputed facts and the developed arguments presented to us, we conclude: (1) Fox was responsible for compliance with state and federal safety regulations and this job responsibility is sufficient to impose on him the duty to comply with 29 C.F.R. § 1910.23(c)(1) *insofar as the regulation applies to his employer.* (2) Given the height and structure of the platform (including the upper and lower platforms) and at least one open side, Fox had a ministerial duty to have a standard railing or an alternative as specified in 29 C.F.R. § 1910.23(c)(1) on the open side or sides of the upper platform, *if Fox's employer was required by state law to comply with this regulation as to this platform.*

IV. Known Danger Exception

■■■

¶ 67. There are very few cases in which courts have concluded the known danger exception applies. In *Cords v. Anderson*, 80 Wis. 2d 525, 541–42, 259 N.W.2d 672 (1977), the court concluded that the danger to hikers of a trail alongside a ninety-foot unguarded gorge, particularly at night, was such that the park manager, who knew about it, had a ministerial duty to either place a warning sign or advise his supervisors of the condition. In *Domino v. Walworth County*, 118 Wis. 2d 488, 490–92, 347 N.W.2d 917 (Ct. App. 1984), we applied the exception to a sheriff's department dispatcher who failed either to have a night time report of a downed tree investigated by department personnel or to notify the town so it could investigate. In *Linville v. City of Janesville*, 174 Wis. 2d 571, 587–88, 497 N.W.2d 465 (Ct. App. 1993), we applied the exception to a suit against paramedics for failing to attempt an immediate rescue of the occupant of a submerged van.

¶ 68. In contrast to the above cases, the known danger exception was held inapplicable in these cases, among a number of others: *Lodl*, 253 Wis. 2d 323 (police officer negligently failed to control traffic at an intersection where the traffic lights were inoperable); *Hoskins v. Dodge County*, 2002 WI App 40, 251 Wis. 2d 276, 642 N.W.2d 213 (sheriff's department received a report of a boat in trouble on a stormy night and sent a deputy to investigate but did not dispatch a rescue boat).

¶ 69. As noted above, the amended complaint, including reasonable inferences from it, alleges that the platform from which Umansky fell was nine feet off the ground and did not have railings. It is reasonable to infer from Fox's job responsibilities that he knew the platform lacked railings. It is also a reasonable inference that a platform nine feet off the ground without railings is unsafe. The cited regulation gives rise to a reasonable inference that the regulatory body considers the platform to be unsafe without railings. However, neither that allegation nor any other in the amended complaint reasonably implies the platform presents the type of compelling danger that warrants an exception to immunity.

¶ 70. Even if we were to assume the amended complaint did state a claim for relief regarding the known danger exception and consider the summary judgment materials, based on the undisputed facts, we would conclude the exception does not apply. The height of the platform and absence of a railing was evident to anyone on the platform, and one could use the platform without falling. It had been used for several years by ABC Inc. and other broadcasting companies. The known danger exception as applied in the case law has been reserved for situations that are

more than unsafe, where the danger is so severe and so immediate that a specific and immediate response is demanded. The undisputed evidence here does not show that the unsafe platform presented this degree of danger.

## CONCLUSION

¶ 71. We conclude that Fox is not entitled to summary judgment on the ground that he is immune from suit. While the undisputed facts show the known danger exception does not apply, that is not the case with respect to the ministerial duty exception. Based on the undisputed facts and the developed legal arguments, we have made a number of legal rulings on the ministerial duty exception that favor the plaintiffs. However, we have not conclusively determined that the ministerial duty exception applies. Nothing in this opinion prevents Fox from raising additional arguments with respect to the ministerial duty exception.

¶ 72. Accordingly, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.